CINCINNATI, N. O. & T. P. RY. CO. v. DENTON, No. 2.—140 S. W. (2d) 796.

Eastern Section. January 9, 1940.

Certiorari Denied by Supreme Court, April 6, 1940.

82

Lynch, Phillips, Hall & Allison, of Chattanooga, for plaintiff in error.

Thach & Thach, of Chattanooga, for defendant in error.

McAMIS, J. This suit was originally instituted by Luther Denton to recover damages from the Railway Company for personal injuries alleged to have been sustained when he fell while riding as a passenger for hire upon one of defendant's trains, the declaration charging that while in the act of alighting from the train a sudden and violent jerk of the locomotive caused him to lose his footing and fall. The declaration also avers as a cause of action defendant's failure to furnish plaintiff medical attention after he was injured.

The alleged fall occurred on December 8, 1937, at Dayton, Tennessee. The original plaintiff Luther Denton died July 1, 1938, and the suit was thereupon revived by the widow, Ethel Denton, who qualified as administratrix of the estate. The declaration of the administratrix adopted the averments of the original declaration and, in addition, charged that the intestate, Luther Denton, died as a result of said fall. Upon the trial of the case, the circuit judge, upon motion of defendant Railway Company, directed a verdict in its favor insofar as plaintiff, administratrix, sought to recover for the death of said Luther Denton, there being no evidence that his death resulted from the fall. From this action the administratrix has not appealed.

The court otherwise overruled defendant's motion for a directed verdict and submitted the case to the jury as one to recover for personal injuries, loss of time, medical expenses, etc. The jury returned a verdict for $1,500 in favor of the administratrix and, its motion for a new trial having been overruled, the Railway Company has appealed in error to this court, insisting that there is no evidence to sustain a jury finding that the deceased fell as the result of a sudden and violent jerk of the train as charged in the declaration and that there is no evidence to sustain a finding that defendant

breached its duty of providing medical attention and treatment after the deceased had alighted from the train at Dayton.

It is conceded that unless the testimony of Luther Denton, taken by deposition before his death, may be found to be so self-contradictory and inconsistent as to amount to no evidence, there is some material evidence upon which the jury may have based a finding that Denton fell as a result of a violent and unusual movement of the train. Defendant's insistence, in this connection, is that Denton's testimony, the only evidence offered by plaintiff upon the subject, is as much to the effect that he fell as a result of stepping on an orange peel as it is to the effect that he fell as a result of the negligence of the defendant charged in the declaration. It is insisted that, since the evidence offered by defendant affirmatively shows that there was no sudden and violent movement of the train causing the deceased to fall but that he fell as a result of stepping on an orange peel, a cause for which defendant would not be liable, there is no evidence to sustain the finding of the jury.

Luther Denton testified that he intended to get off the train at Dayton; that when the flagman called the station he arose from his seat and held to the back of the seat; that when the flagman called the station the second time he left his seat and started toward the front of the coach. As to what then occurred he testified:

"I started and took about 2 steps and there was a sudden jar that threw me off my feet on my right hip here. . . .

"Q. When the train gave a sudden jar what happened to you? A. My feet went out from under me.

"Q. Did you fall? A. Yes, sir."

On cross-examination, he testified as follows:

"Q. What caused you to fall, Mr. Denton? A. The jar of the locomotive, I could not tell. If it was not the jar from the train I could not tell what else. It was bound to be something in the train that throwed me. I was working and stout. There was nothing wrong with me. Working every day in the week; walking four miles on the mountain; standing up there 16 hours every night for the W. P. A.

"Q. Do you really know what caused you to fall? A. The jar of the train in some way.

"Q. The jar of the train coming to a stop? A. Yes, sir. I could not say what else it could have been.

"Q. Did orange peel have anything to do with your fall? A. I am not going to say whether it did or not. It might have. I could have stepped on one and it got among my feet, my feet got out from under me on an orange peel.

"Q. You mean an orange peel could have caused your fall? A. It could have done it. I could not say. There was something in the train that caused all this trouble."

On redirect examination Mr. Denton testified as follows:

"Q. You state there was something in the locomotive that caused you to fall? State as well as you remember. A. He released his brake in some way. I am no railroad man. I used to be in 1902. It may have been when he released his air that threw me to my feet.

"Q. State whether or not there was an unusual jerk about the train. A. There was an unusual jerk.

"Q. Was it a violent jerk? A. It was to me. I could not stand up under it after I turned loose from the seat."

The foregoing is the entire testimony offered by plaintiff to establish a sudden and violent movement of the train. Defendant offered several witnesses who testified in substance that after Mr. Denton fell they saw some orange peel in the aisle of the coach and saw wet skid marks apparently caused by someone stepping on the peel. There is no definite proof that Denton stepped on the orange peel but the circumstances are, perhaps, such that the jury might have so concluded upon all the evidence.

We think the testimony which we have quoted fails to establish as the cause of the fall the negligence charged in the declaration. It is true the witness at one point in his deposition, when questioned by counsel, states that a sudden movement of the train threw him off his feet but the force of this statement is destroyed by his subsequent statement that an orange peel could have caused him to fall—that he "could not say what else it could have been" other than the jar of the train. While a reviewing court is required to take the view of the evidence most favorable to the successful party before the jury, where, as in this cause, the testimony shows that it is based upon surmise and conjecture and not upon the knowledge of the witness who, in effect, admits that such is the case, it must be concluded that the verdict of the jury must likewise be the result of surmise and conjecture. Isolated portions of the testimony of a witness cannot properly be looked to as sustaining the verdict. The testimony of the witness must be considered in its entirety and if it then appears that the witness has not actual knowledge of the fact about which he testified the entire testimony must be rejected as non-probative in value.

The burden rested upon plaintiff to establish as the cause of the fall the negligence charged in the declaration and we think the evidence offered failed to carry this burden. We think the trial court should have directed a verdict upon the issue of defendant's negligence in causing the deceased to fall. A verdict will be here directed and the suit dismissed insofar as recovery is sought for damages resulting directly from the fall.

It is insisted the court erred in defining the duty of a common carrier of passengers in the following language:

"It is also the duty of the defendant, the Railway Company, if

they knew this man had been hurt, to see that he had attention thereafter. I believe this is a degree of reasonable care, and not the highest degree of care to exercise a reasonable degree of care to see that he had a doctor or was taken to a hospital. This is the degree required of them, and if they failed they would be guilty of negligence. If it proximately caused the suffering or discomfort, or aggravated the injuries you can consider that along with the other.''

It is insisted that the court erred in so charging the jury without also submitting to the jury the question of whether the condition of the injured passenger was such that he needed assistance in procuring medical attention. The uncontradicted proof is that Mr. Denton needed assistance in getting off the train and in walking to the station platform. Defendant appears to have recognized its duty of procuring medical attention. Before leaving the station the conductor instructed the station agent to call a doctor and look after him (he was thereafter taken to the hospital by agents of defendant) but, according to the testimony adduced by plaintiff, there was some unnecessary delay in taking him into the station out of disagreeable weather and in procuring medical attention.

In addition to defendant's apparent recognition of this duty, and although special instructions were requested and granted by the court as to what would constitute a reasonable effort to procure such services, no request was made to submit to the jury the issue which it is now insisted the court erred in not submitting.

While the duty of a common carrier to supply medical attention to an injured or disabled passenger is a relative one, depending, among other things, upon the condition of the passenger and his ability to take care of himself without assistance, there was no special request tendered by defendant to bring the application of this rule of duty within such limits. The charge, as given, was not misleading but was meager in the sense that it failed to define the limits of the duty resting upon a carrier under the circumstances averred in the declaration and shown by the proof.

Though, as stated, defendant requested special instructions upon another aspect of the duty owing an injured passenger, the court was not requested to submit to the jury the question of whether or not Mr. Denton was in such condition as to entitle him to invoke defendant's special duty of caring for injured and disabled passengers unable to adequately and properly take care of themselves. Under these circumstances, we think defendant waived the right to have this question submitted to the jury.

''Meagreness of an instruction [is] not reversible error for it is the duty of the party to ask a more specific charge when desired.'' Memphis Street Railway Co. v. Aycock, 11 Tenn. App., 260; Brakebill & Hamilton et al. v. Knoxville Contracting, etc., Co., 14

Tenn. App., 531; Tennessee Coach Co. v. Young, 18 Tenn. App., 592, 80 S. W. (2d), 107; Travis v. Bacherig, 7 Tenn. App., 638; Cochran v. Gaither, 9 Tenn. App., 247.

It is unnecessary to say more upon this subject since, for reasons hereinafter stated, the case will be remanded for a new trial and defendant may then have this question submitted to the jury under a proper charge.

By the third and last assignment it is insisted that the verdict is so grossly excessive as to indicate passion, prejudice or caprice on the part of the jury.

There is no way by which the court can determine how much the jury found plaintiff entitled to recover on each of the two theories of liability or whether the jury believed $1,500.00 a proper verdict upon a finding that plaintiff was entitled to recover upon one theory but not upon the other. As to the damages flowing from the alleged failure to provide medical attention after deceased was injured, the proof shows that there was a delay of an hour or less and tends to show that no injury resulted from the delay other than some discomfort and pain. It would seem that recovery for this delay could not be a large amount but we think, under the peculiar circumstances of the case, this is not a proper case for suggesting a remittitur. In the absence of an agreement of counsel as to the amount due upon this alleged cause of action the cause will be remanded for a trial upon the issue of whether or not defendant was guilty of actionable negligence in failing to provide prompt medical attention as charged in the declaration. Costs of appeal will be equally divided. Costs below will abide the action of the court upon the remand.

Portrum and Ailor, JJ., concur.