INTERNATIONAL YARN CORP.,
Appellant,

v.

Gay Lynn CASSON, Appellee.

Supreme Court of Tennessee.

Aug. 30, 1976.

Donald G. Dietrich, Leonard M. Caputo, Fillauer, Dietrich, Whitson, Webb & Caputo, Cleveland, for appellant.

Conrad Finnell, James S. Thompson, Finnell, Thompson, Scott & Logan, Cleveland, for appellee.

### OPINION

BROCK, Justice.

The employer in this Workmen's Compensation case appeals the Chancellor's finding that the claimant suffered a 35% permanent

partial disability to the body as a whole as the result of an accident arising out of and in the course of her employment. The principal question is whether or not there is any evidence to support the finding that the employee sustained a disability which is permanent.

The evidence shows that Gay Lynn Casson was an employee of International Yarn Corporation and was working on the night of March 16, 1973, when the roof of the defendant's plant collapsed during a rainstorm. At the time of the accident she was sufficiently oriented to get out of the building and to a place of safety and to express concern about a relative who was also working in the building. By the time she reached the parking lot she was nervous and crying and she fainted in the arms of her aunt, who was waiting in the parking lot. She was taken to Bradley Memorial Hospital and admitted with a diagnosis of hysteria. She remained overnight for observation and was dismissed in an improved condition. No symptoms of physical injury were detected, but it was observed that she could not speak well.

The claimant returned to the plant a few days after the occurrence and told the manager she was able to go back to work. She did go back when the plant re-opened in April and continued working until July when she was laid off along with a number of other persons.

Miss Casson testified that she was knocked down by a rush of falling water and hit her head on a piece of equipment. She remembered running out of the building, but could recall nothing further until sometime after she was admitted to the hospital, where she attempted to communicate and found herself unable to speak. After the incident she began to stutter, never having done so before, and the problem continued up until the time of the trial. She also complained of physical pain, especially headaches and back pains, dating from the time of the accident. Her most serious complaint, however, is that, since the accident she has experienced chronic nervousness, irritability and anger.

Other witnesses observed a marked change in the claimant's personality. An aunt described her as "moody and hateful and gripey . . . not like herself." Her mother testified that she changed from a cheerful, sociable person into a near-recluse, that she began stuttering shortly after the accident, that she was sick and complained of being in pain much of the time, and that she spends most of her time sleeping and moping in her room. She denied having any reason to think that the failure of Miss Casson's brief marriage following the accident had anything to do with her complaints and testified that even during the time that the claimant continued to work following the accident she was unwell.

This lay testimony is sufficient to support the finding of the Chancellor that Miss Casson's difficulties began with the occurrence at the plant, although there were other possible traumatic episodes in her life between the time of the accident and the trial.

The appellant characterizes the rainstorm which caused the collapse of the building as a hazard common to the neighborhood and not peculiar to plaintiff's employment. Cf. *Jackson v. Clark & Fay, Inc.,* 197 Tenn. 135, 270 S.W.2d 389 (1954); *Hill v. St. Paul Fire & Marine Ins. Co.,* 512 S.W.2d 560 (Tenn.1974). Certainly the rain itself was a hazard common to the neighborhood, but Miss Casson's presence in a building that could not withstand the force of ordinary rainfall was a circumstance directly related to the employment. The contention that she must prove the defendant knew of the dangerous condition is not sustainable. This assignment is overruled.

The testimony of Dr. Spalding, a psychiatrist, establishes that the accident caused the employee to develop a traumatic neurosis, described as an hysterical neurosis, with conversion reactions of pain in her head, back, legs and other parts of her body and with dissociative reactions of amnesia, inability to talk and irritability and anger.

The most serious question presented is whether there is material evidence that the

disability, assuming that it exists, is permanent. The testimony of Dr. Spalding on the point is equivocal and self-contradictory. At one point, he said that Miss Casson could handle "a simple kind of mill job, probably very similar to what she was doing" before the accident. However, he made a similar remark shortly afterward and prefaced it with the comment that "this is pure speculation." But immediately following he said that it was "probable" she could go back to work after this litigation is concluded. He also said that work would have therapeutic value for her.

He stated that her ability to return to work would depend upon certain hypothetical future events, such as a simple, undemanding job, an understanding supervisor, a protective husband, professional help, a sense of being believed. He questioned her ability to make use of psychiatric help. He replied affirmatively to counsel's suggestion that Miss Casson's complaints "may be with her for the rest of her life, or they may not be, depending on what the future holds." He also testified that her pain, and especially her irritability and nervousness, would interfere with her ability to work, that this would be a continuing problem, and that he would expect her to be more susceptible to hysterical reaction in the future. But, he also stated that he "couldn't answer" the question whether or not the neurosis would disappear, nor the question whether or not the accident had diminished the appellee's ability to work.

■ We conclude that there is no material evidence in this record to support the finding of the Chancellor that the appellee's disability of traumatic neurosis will be permanent. Traumatic neurosis, when established, is a compensable injury, *Buck & Simmons Auto and Electric Supply Co. v. Kesterson,* 194 Tenn. 115, 250 S.W.2d 39 (1952); but, that it is a permanent injury in a given case must be established by medical evidence. *Minton v. Leonard,* 219 Tenn. 642, 412 S.W.2d 886 (1967). In our view, the testimony of Dr. Spalding, the only medical witness who testified concerning the nature and effects of the traumatic neurosis, is so self-contradictory and speculative that it has no probative value upon the issue of the permanency of the appellee's disability. Isolated portions of the testimony of a witness cannot be relied upon to sustain a finding of fact; the testimony of the witness must be considered in its entirety, and, if so considered, it is so contradictory that one part destroys the other it amounts to nothing and cannot sustain a finding. See *Cincinnati, N. O. & T. Ry. Co. v. Denton,* 24 Tenn.App. 81, 140 S.W.2d 796 (1940); *Pashea v.Terminal R. Ass'n of St. Louis,* 350 Mo. 132, 165 S.W.2d 691 (1942). We think Dr. Spalding's testimony, insofar as it relates to permanency of appellee's disability, falls into this category. As we did in similar situations in *American Insurance Co. v. Ison,* Tenn., 519 S.W.2d 778 (1975) and *Security Ins. Co., Inc. v. Hughes,* Tenn., 529 S.W.2d 719 (1975) and others, we reverse the decree of the trial court and remand this cause for a new trial of the issues of the permanent or temporary nature of appellee's disability and the extent thereof.

Costs of this appeal are taxed against appellee.

COOPER, C. J., and FONES, HENRY and HARBISON, JJ., concur.