IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 9, 2001 Session

## LYNWARD LEVY JACKSON v. JOYCE H. ALLEN and BILLY R. ALLEN

**An Appeal from the Circuit Court for Montgomery County**
**No. C13-413    James E. Walton, Judge**

_____

**No. M2000-01673-COA-R3-CV - Filed April 23, 2002**

_____

This is a personal injury case. The plaintiff sued the defendants for back injuries he sustained in a car accident. The jury returned a verdict in favor of the plaintiff on several elements of damage, including damages for permanent injury and for future pain and future loss to enjoyment of life. The defendants moved for judgment notwithstanding the verdict on these elements of damage only. The trial judge denied the motion. The defendants now appeal. We affirm, finding that material evidence exists to support the jury's conclusion that the accident partially caused the plaintiff's injuries.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY K. LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Steven C. Girsky, Batson, Nolan, Brice, Harvey & Williamson of Clarksville, Tennessee, attorney for the appellants, Joyce H. Allen and Belly R. Allen.

Herbert E. Patrick of Clarksville, Tennessee, for the appellee, Lynward Levy Jackson.

### OPINION

This is a personal injury case. On November 19, 1997, plaintiff Lynward Levy Jackson ("Jackson"), a soldier in the United States Army, was involved in a car accident with Joyce H. Allen. On November 18, 1998, Jackson filed suit in the lower court against Joyce Allen and her husband (owner of the car), Billy R. Allen (collectively "Allens"), seeking damages relating to a back injury that he allegedly sustained in the accident. On April 3, 2000, the case went to trial before a jury. At trial, the only medical proof introduced by Jackson was the deposition of Keith D. Starkweather, M.D. ("Dr. Starkweather"), an orthopedic physician who treated Jackson after the accident.

Dr. Starkweather initially examined Jackson on September 3, 1998, and twice thereafter. Dr. Starkweather testified that, at his first visit, Jackson told him that prior to the accident he had been diagnosed with spondylolisthesis in his lower back. Spondylolisthesis is a slippage of the vertebral bones. Dr. Starkweather testified that Jackson told him that the impact of the accident had worsened his condition. Jackson told Dr. Starkweather that, after the accident, he experienced a significant degree of pain that radiated down his legs. Dr. Starkweather prescribed Jackson anti-inflammatory medications and instructed him to modify his military activity. Dr. Starkweather found that the increase in pain Jackson experienced was 50% attributable to the car accident and 50% attributable to his preexisting condition, and that Jackson sustained a 7% permanent impairment according to the Guide to the Evaluation of Permanent Impairment. Dr. Starkweather opined that, "within a reasonable degree of medical certainty," Jackson's condition will not improve and that it could worsen over time. Dr. Starkweather noted that Jackson's physical training test score dropped from 296 out of 300 before the accident to 243 out of 300 after the accident, and reasoned that the scores indicated a "significant decrease in functional ability." He stated that Jackson's pain and decrease in ability was "consistent with" an injury caused by a car accident.

The Allens did not object to the introduction of Dr. Starkweather's deposition either before or during the trial. At the close of the proof, however, the Allens objected to the trial court giving the jury an instruction on "future injury or damages" and "damages for permanent injury" based upon the lack of proof regarding those elements of damage. The Allens maintained that the evidence, specifically the deposition of Dr. Starkweather, was insufficient to establish Jackson's claim with respect to future and permanent damages. The trial court overruled the Allens' objection, finding that "the doctor's testimony on the whole does raise a question with regard to those issues."

The trial court submitted to the jury a special verdict form that itemized each element of alleged damages, including future and permanent damages. The jury returned a verdict in Jackson's favor and awarded the following: (a) pain and suffering (past) – $3,000; (b) pain and suffering (future) – $8,000; (c) permanent impairment – $8,000; (d) loss of ability to enjoy life (past) – $8,000; (e) loss of ability to enjoy life (future) – $12,000; (f) property damage – $6,400; and (g) loss of use of vehicle – $600. Thus, the jury awarded Jackson a total of $46,000 in damages.

On April 27, 2000, the Allens filed a motion for new trial or for remittitur arguing, *inter alia*, that the trial court should not have submitted to the jury any issue regarding future or permanent damages because Dr. Starkweather's testimony failed to establish such damages or the causal connection between such damages and the accident within a reasonable degree of medical certainty. On May 2, 2000, the trial court entered a judgment on the jury verdict. On May 31, 2000, the trial court denied the Allens' motion for a new trial or for remittitur, finding that "there is evidence to support the verdict of the jury." From this order, the Allens now appeal.[1]

---

[1]In their notice of appeal, the Allens stated that they were also appealing a June 5, 2000 order granting discretionary costs to Jackson. The appellate briefs, however, do not address the propriety of that order, and the issue

(continued...)

The Allens' argument on appeal is the same as it was before the trial court, namely that Dr. Starkweather's deposition testimony was insufficient to support a claim for permanent disability or future injuries resulting from the accident. The Allens ask this Court to reverse the trial court's decision denying their motion and to order a remittitur for $28,000 relating to those elements of damage.

The trial court below, in refusing to grant a remittitur, approved the jury's verdict in its role as "thirteenth juror." We must affirm that approval if there is any material evidence to support the verdict. *See Coffey v. Fayette Tubular Prods.*, 929 S.W.2d 326, 331 n.2 (Tenn. 1996); *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125, 129 (Tenn. 1980). "This deferential standard of review is consonant with the principle, long recognized in Tennessee law, that the jury bears primary responsibility for awarding damages in a personal injury case, followed closely by the trial court in its rose as thirteenth juror." *Coffey*, 929 S.W.2d at 331 n.2.

Generally, the causation of a medical condition must be established by testimony from a medical expert. *Choo Choo Partners*, 2001 Tenn. App. LEXIS 821, at *6. When a medical expert testifies about a physical condition, "his opinion must be reasonably certain both as to the cause of the physical condition and its future effects." *Porter v. Green*, 745 S.W.2d 874, 877 (Tenn. Ct. App. 1987). "It is not necessary that the evidence show conclusively or without a shadow of doubt that the injuries are permanent. But while absolute certainty should not be required, a mere conjecture, or even a probability, does not warrant the giving of damages for future disability which may never exist." *Reserve Life Ins. Co. v. Whittemore*, 442 S.W.2d 266, 274 (Tenn. Ct. App. 1969) (quoting *Maryland Cas. Co. v. Young*, 362 S.W.2d 241, 243 (Tenn. 1962)); *see also Vandergriff v. Bituminous Cas. Corp.*, 692 S.W.2d 20, 22 (Tenn. 1985) (finding that the permanency of a disability must be shown by a preponderance of the evidence, and that the expert's testimony must be viewed in its entirety) (citing *Int'l Yarn Corp. v. Casson*, 541 S.W.2d 150, 152 (Tenn. 1976)). In addition to determining that a permanent injury exists, a medical expert must determine that a causal connection exists between the accident and the injury to "a reasonable degree of medical certainty." *See State v. Young*, No. 01C01-9605-CC-00208, 1998 Tenn. Crim. App. LEXIS 566, at *61-62 (Tenn. Crim. App. May 22, 1998). Those "magic words," however, need not be used for the expert opinion to suffice as proof of causation. Rather, the testimony must show, as a whole, that it is more probable than not that the accident caused the injury. *Id.*; *see also Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861-62 (Tenn. 1985); *Choo Choo Partners*, 2001 Tenn. App. LEXIS 821, at *6-*8.

In this case, Jackson saw Dr. Starkweather approximately ten months after the accident. Jackson told Dr. Starkweather that, since the accident, he had suffered significant back pain that radiated down his leg. At trial, Jackson acknowledged that he had had pain in his lower back for several years prior to the accident, but asserted that the pain "wasn't as serious as it is now after the

---

[1](...continued)
was not raised at oral argument. Therefore, we find that the Allens' challenge to that order has been abandoned on appeal.

car accident." Jackson said that, prior to the accident, he participated in twelve-mile road marches carrying forty-five pound rucksacks as well as seven pound weapons. After each march, he would have deep hip pain, but the pain would subside after about a day and a half. Jackson also acknowledged that, prior to the accident, his back problems caused him to be placed on military profile for several months, which meant that his activities were restricted.[2] While on military profile, Jackson was instructed not to do any heavy lifting or any physical therapy without assistance. In his last physical therapy test before the accident, Jackson received a score of 296 out of 300. After the accident, Jackson received a score of 243 on the same test. Jackson testified further that, after the accident, he was unable to participate in recreational activities such as basketball, softball, and football, and that he now suffers from discomfort when he is sleeping or driving.

Dr. Starkweather's deposition was read into evidence just after the conclusion of Jackson's testimony. Dr. Starkweather explained that spondylolisthesis is the type of condition that can be asymptomatic, with no apparent discomfort, but that it can be aggravated by a sudden trauma, such as the impact of the accident in this case. Dr. Starkweather referred to Jackson's statements made during his medical examinations and concluded that the claimed injuries were "consistent with" the accident described. Dr. Starkweather further noted that the lower score Jackson received in his physical therapy test after the accident supported Jackson's claim that his preexisting injury was aggravated by the accident. Dr. Starkweather concluded that Jackson had a 7% impairment rating according to the Guide to the Evaluation of Permanent Impairment, and that, to a reasonable degree of medical certainty, Jackson's condition would not improve but in fact could worsen over time. Dr. Starkweather attributed 50% of Jackson's symptoms to the car accident and 50% to his preexisting condition.

The Allens do not directly challenge directly the 7% disability rating given to Jackson by Dr. Starkweather. Dr. Starkweather's deposition testimony, when viewed in a light most favorable to Jackson, is material evidence to support the jury's finding that Jackson's injuries were permanent. Dr. Starkweather's conclusion that Jackson's injury will not improve indicates "to a reasonable degree of medical certainty" that the impairment is permanent.

The Allens assert, however, that Dr. Starkweather's testimony does not constitute material medical evidence to support the conclusion that Jackson's permanent injuries were caused by the accident. The Allens claim that, although Dr. Starkweather concluded that the cause of Jackson's injuries was 50% attributable to the accident and 50% attributable to the preexisting condition, Dr. Starkweather admitted that his opinion was based primarily on Jackson's subjective complaints of pain and lack of functional ability. The Allens rely in part on the following testimony:

---

[2]Jackson had been scheduled to be released from military restriction on November 20, 1997, the day after the accident.

Q.    So really you have to admit, candidly, that this [percentage of breakdown] is really just a total guess as to what the percentage breakdown is from before and after this accident?

A [Dr. Starkweather].    Yeah.  I'm relying nearly entirely on Mr. Lynward Jackson's own words of how he feels.  Most of the records before and after don't show a significant change in the anatomic structure of the bone itself.  From what I can tell from the records before and after looks the same.

His complaints have worsened, and it's based on those complaints that were taken during my three visits with him that I attributed that he actually had a worsening of symptoms . . . .

*    *    *

It gets down to me having to rely on Mr. Jackson. . . . [I]t's difficult to assign this to the accident, and it is also difficult to not assign any of it to the accident.

The type of accident that he had and the type of preexisting back problem that he had made him highly susceptible to some degree of traumatic injury to his back, but, again, I will state that I'm attributing the majority, if not the entirety of that, based on the subjective complaints by Mr. Jackson.

Because Dr. Starkweather said that tests did not show any change in the anatomic structure of the bone, and acknowledged that he relied primarily on Jackson's subjective description of how he felt, the Allens argue that Dr. Starkweather's conclusion regarding causation was not based on the requisite "reasonable degree of medical certainty."  In other words, they claim that because Dr. Starkweather relied on Jackson's subjective complaints, his conclusion did not show that it was more probable than not that the cause of Jackson's injuries were 50% attributable to the accident.  They describe Dr. Starkweather's opinion as speculative, and note that "mere speculation is not evidence which establishes proximate cause." *Primm*, 845 S.W.2d at 771.

The Allens also assert on appeal that Dr. Starkweather's conclusions were flawed because he was uninformed about Jackson's pre-accident condition.  In some of Jackson's pre-accident medical reports, he had complained of the same types of back problems that he claimed after the accident.  For example, in December 1995, Jackson went to the emergency room with complaints of back pain radiating into his right hip, and told the emergency room physicians that such pain had been occurring over the prior three years.  In April 1997, Jackson had problems with hip pain radiating down to his right calf, at which time he was placed on military restriction.  The Allens

argue that Dr. Starkweather's unfamiliarity with these pre-accident complaints establishes that his testimony regarding causation was not supported by a reasonable basis.

To determine whether Dr. Starkweather had a reasonable basis for his opinions, we review overall his deposition testimony. *See Primm*, 845 S.W.2d at 771 (stating that the plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the defendant was a cause in fact of the result"). Clearly Dr. Starkweather's opinions were based in large part on Jackson's subjective complaints. Dr. Starkweather explained that his diagnosis of Jackson was necessarily based on Jackson's description of his own sensations, because the soft tissue damage from which he suffered could not be easily detected by objective testing, such as x-rays or CT (computerized tomography) scans.[3] (R. at 18). For this type of injury, Dr. Starkweather explained, Jackson's feelings of pain and his inability to engage in certain activities were "consistent with" the accident that was asserted to have caused Jackson's permanent injury. The nature of spondylolisthesis, Dr. Starkweather testified, is such that it can remain asymptomatic until a sudden trauma or impact, such as the accident in the instant case. Dr. Starkweather stated that he had seen the military records regarding the Jackson's pre-accident complaints of pain, but noted that the pre-accident and post-accident physical therapy tests indicated a significantly decreased functional ability after the accident.

In rendering his medical opinion, Dr. Starkweather was entitled to presume that Jackson's subjective complaints of aggravated pain after the accident were true, and to consider Jackson's subjective complaints in light of the available medical information. The jury would, of course, ultimately determine the credibility of Jackson's testimony regarding his symptoms. Dr. Starkweather's conclusion that Jackson's permanent injury was 50% caused by the accident was based in part on Jackson's subjective complaints, as well as the nature of Jackson's condition and the other available information relating to Jackson's pre-accident and post-accident functional ability. To the extent that other testimony dilutes Dr. Starkweather's conclusion, that evidence simply goes to the weight to be given to the opinion regarding the causal relationship. *See Choo Choo Partners*, 2001 Tenn. App. LEXIS 821, at *11-*12 (determining that the causal relationship testimony was not negated by other testimony).

The Allens focus on Dr. Starkweather's statement that Jackson's complaints were "consistent with" having suffered from the impact of the accident. The Allens assert that a finding that an injury is "consistent with" the claimed cause is not a determination that causation was "more probable than not." As noted above, the exact terminology used by an expert is less important than the meaning of his testimony as a whole. "It is unreasonable to expect a medical expert to testify with legal precision. . . . But such testimony must be viewed as the testimony of a medical person and not that of an individual trained in the law." *Id.* at *18. When read in context, Dr. Starkweather's testimony "affords a reasonable basis for the conclusion that it is more likely than not that the conduct of [The

---

[3]Dr. Starkweather stated that, although he obtained an MRI (magnetic resonance imaging) of Jackson's back, he did not have a pre-accident MRI with which to compare it. Therefore, it was not helpful in providing an objective basis for the conclusion that the accident caused a worsening in Jackson's preexisting condition.

Allens] was a [50%] cause in fact of the result." *Id.* at *15-*16 (quoting ***Lindsey***, 689 S.W.2d at 861). Therefore, the trial court did not err in denying the Allens' motion for judgment notwithstanding the verdict.

       Accordingly, the decision of the trial court is affirmed. Costs are to be assessed to the appellants, Joyce H. Allen and Billy R. Allen, and their surety, for which execution may issue, if necessary.

 

_____

HOLLY K. LILLARD, JUDGE