IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 4, 2009 Session

# THOMAS M. GAUTREAUX v. CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY

**Appeal from the Chancery Court for Hamilton County**
**No. 08-0946     Howell N. Peoples, Chancellor**

**No. E2009-00367-COA-R3-CV - FILED JUNE 29, 2010**

Thomas M. Gautreaux ("Gautreaux") filed a petition pursuant to the Tennessee Public Records Act for access to a settlement agreement involving Chattanooga-Hamilton County Hospital Authority ("the Hospital" or "Erlanger") in a previous lawsuit. The Hospital denied the request, claiming that the document was privileged under the Tennessee Peer Review Law. Gautreaux then filed a petition for a show cause hearing. After the hearing, the trial court determined that the settlement agreement was exempt from disclosure under the Peer Review Law. Gautreaux appeals. We affirm.

**Tenn. R. App. P. 3; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

John P. Konvalinka and Matthew D. Brownfield, Chattanooga, Tennessee, for the appellant, Thomas M. Gautreaux.

Fred H. Moore and Joseph P. White, Chattanooga, Tennessee, for the appellee, Chattanooga-Hamilton County Hospital Authority.

## OPINION

### I.  BACKGROUND

Gautreaux tendered a written request upon the Hospital pursuant to the Tennessee Public Records Act, Tenn. Code Ann. § 10-7-101 et seq., for copies of a settlement agreement ("Settlement Agreement") entered into by the Hospital. The Settlement

Agreement facilitated the resolution of a lawsuit that had been filed by Calvin Bell, M.D. ("Dr. Bell") against the Hospital in the United States District Court for the Eastern District of Tennessee.[1]

The Hospital denied Gautreaux's request because the Settlement Agreement constituted a resolution of a peer review process between the Hospital and Dr. Bell. In the Hospital's view, the Settlement Agreement was exempt from public disclosure by the Tennessee Peer Review Law.

Subsequently, Mr. Gautreaux filed a petition pursuant to Tenn. Code Ann. § 10-7-505 to compel the Hospital to act. A show cause hearing was conducted on January 8, 2009. At the hearing, the trial court heard testimony from Nita Shumaker, M.D. ("Dr. Shumaker") and Pat Eller, the Hospital's Medical Staff Coordinator.

Dr. Shumaker was the Hospital's Chief of Staff and serving on the Hospital's Medical Executive Committee ("MEC") at the time the Settlement Agreement was signed. Dr. Shumaker testified that she participated in the mediation of Dr. Bell's lawsuit on behalf of the Hospital's medical staff. Jim Brexler, the Hospital's CEO, also attended the mediation. On direct examination, Dr. Shumaker stated that the mediation was conducted for the purpose of resolving an ongoing "peer review proceeding" pertaining to Dr. Bell. Dr. Shumaker testified that at the end of the mediation, the parties entered into the Settlement Agreement. However, on cross examination, Dr. Shumaker admitted that she had no personal knowledge of where the original Settlement Agreement was located, and it was her understanding that the Settlement Agreement was placed in Dr. Bell's peer review file.

After making detailed findings of fact, the trial court issued a Memorandum Opinion and Order ("the Order") denying Gautreaux's request for access to the Settlement Agreement. The trial court held that the Settlement Agreement constituted a privileged document under the Tennessee Peer Review Law, and therefore, the Settlement Agreement was exempt from disclosure pursuant to the Tennessee Public Records Act. Gautreaux then filed this appeal.

## II. ISSUES

Gautreaux raises the following issues, which we restate:

---

[1] In the original Complaint, Dr. Bell alleged violations of his civil rights pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1988. Dr. Bell also alleged that the Hospital engaged in discriminatory employment practices.

1.  Whether the trial court erred in determining that the Settlement Agreement was exempt from disclosure under the Tennessee Public Records Act.

2.  Whether the trial court erred in refusing to compel production of redacted portions of the Settlement Agreement.

3.  Whether the trial court erred in denying Gautreaux's request for attorney's fees.

4. Whether the trial court erred in placing the burden of proof on Gautreaux.

## III.  STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness, and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d).  With respect to legal issues, this court's review is conducted under a pure de novo standard of review.  *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).  Mixed questions of law and fact are reviewed de novo with no presumption of correctness, but appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

This case requires an interpretation of the Tennessee Public Records Act and the Tennessee Peer Review Law.  We must "ascertain and give effect to the legislative intent without restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).  Issues involving construction of a statute and its application to facts involve questions of law. *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002).  Therefore, the trial court's resolution of these issues is not entitled to Tenn. R. App. P. 13(d)'s presumption of correctness on appeal.  This court will review these issues de novo and reach our own independent conclusions regarding them.  *King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002).

## IV.  DISCUSSION

### A.

Tennessee courts have long recognized the public's right to examine governmental records. *See generally State ex rel. Wellford v. Williams*, 75 S.W. 948, 958 (Tenn. 1903). The General Assembly enacted the Public Records Act and it governs "the right of access to" governmental records. *See Cole v. Campbell*, 968 S.W.2d 274, 275 (Tenn. 1998); *Ballard*

*v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). The Public Records Act, at Tenn. Code Ann. § 10-7-503(2)(A) states, in pertinent part, as follows:

> All state, county and municipal records shall, at all times, during business hours, which for public hospitals shall be during the business hours of their administrative offices, be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, *unless otherwise provided by state law*.

Tenn. Code Ann. § 10-7-503(2)(A) (Supp. 2009) (emphasis added). This court broadly construes the Public Records Act in order to "give the fullest possible public access to public records" as directed by the General Assembly. Tenn. Code Ann. § 10-7-505 (d); *see also Brennan v. Giles County Bd. of Educ.*, No. M2004-00998-COA-R3-CV, 2005 WL 1996625, at *2 (Tenn. Ct. App. W.S., Aug. 18, 2005) (internal citation omitted). There is a clear legislative policy favoring disclosure; that policy guides this court's determination of whether the sought records are subject to public disclosure. *Fodness v. Newport & Cocke County Econ. Dev. Comm'n, Inc.*, No. E2004-01491-COA-R3-CV, 2005 WL 607964, at *5 (Tenn. Ct. App. E.S., Mar. 16, 2005). Therefore, unless it is clear that the disclosure of a record or class of records is exempt from disclosure, we must require disclosure even in the face of "serious countervailing considerations." *Swift v. Campbell*, 159 S.W.3d 565, 572 (Tenn. Ct. App. 2004) (citing *Memphis v. Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 684 (Tenn. 1994)).

In *Swift*, this court explained that although disclosure of public records is favored, the General Assembly provided that some public records are exempt from disclosure. 159 S.W.3d at 571. This court observed:

> Notwithstanding the breadth of the public records statutes' disclosure requirements, the General Assembly recognized from the outset that circumstances could arise where the reasons not to disclose a particular record or class of records would outweigh the policy favoring public disclosure. Accordingly, the General Assembly provided two types of exceptions from disclosure under the public records statutes. First, the General Assembly included specific exceptions from disclosure in the public records statutes themselves. Second, it acknowledged and validated both explicit and implicit exceptions from disclosure found elsewhere in state law.

*Id.* The last clause of Tenn. Code Ann. § 10-7-503(2)(A), "unless otherwise provided by law" provides a catchall exception to the Public Records Act. This provision exempts documents that are made privileged or protected from disclosure by Tennessee laws other

than the Act itself. *The Tennessean v. City of Lebanon*, No. M2002-02078-COA-R3-CV, 2004 WL 290705, at *4 (Tenn. Ct. App. M.S., Feb. 13, 2004). Therefore, in this appeal, we must decide whether the Settlement Agreement falls within an exception to disclosure.

The exception at issue in this case is the Tennessee Peer Review Law, Tenn. Code Ann. § 63-6-219. In 1967, the General Assembly enacted the Peer Review Law and created a statutory privilege covering documents related to the professional review of physicians. *See* Tenn. Code Ann. § 63-6-219(e) (Supp. 2009). In enacting the statute, the General Assembly recognized that "confidentiality is essential both to effective functioning of these peer review committees and to continued improvement in the care and treatment of patients." Tenn. Code Ann. § 63-6-219(b)(1) (Supp. 2009). Specifically, the Peer Review Law provides, in relevant part, as follows:

> (c) As used in this section, "medical review committee" or "peer review committee" means any committee of a state or local professional association or society, including impaired physician peer review committees, programs, malpractice support groups and their staff personnel, or a committee of any licensed health care institution, or the medical staff thereof, or a medical group practice, or any committee of a medical care foundation or health maintenance organization, preferred provider organization, individual practice association or similar entity, the function of which, or one (1) of the functions of which,. . .to evaluate or review the diagnosis or treatment or the performance or rendition of medical or hospital services that are performed under public medical programs of either state or federal design.

> * * *

> (e) All information, interviews, incident or other reports, statements, memoranda or other data furnished to any committee as defined in this section, and any findings, conclusions or recommendations resulting from the proceedings of such committee are declared to be privileged. All such information, in any form whatsoever, so furnished to, or generated by, a medical peer review committee, shall be privileged. The records and proceedings of any such committees are confidential and shall be used by such committee, and the members thereof only in the exercise of the proper functions of the committee, and shall not be public records nor be available for court subpoena or for discovery proceedings. . . . Nothing contained in this subsection (e) applies to records made in the regular course of business by a hospital or other provider of health care and information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil proceedings merely because they were presented during proceedings of such committee.

Tenn. Code Ann. § 63-6-219(c) and (e) (Supp. 2009).

Gautreaux contends that because the Settlement Agreement was entered into by the Hospital, a public entity, it is subject to the disclosure requirements of the Public Records Act.

The trial court found that the Peer Review Law precluded disclosure of the Settlement Agreement because it "is part of the peer review process. It follows that it is confidential and privileged pursuant to the Tennessee Peer Review Law of 1967. . . ." Gautreaux argues that the Hospital failed to present sufficient and credible evidence to support the trial court's finding. He claims that the inconsistencies in witness testimony illustrate that the Settlement Agreement did not resolve an ongoing peer review process, but it only resolved Dr. Bell's lawsuit. In Gautreaux's view, the Settlement Agreement amounts to a record "made in the regular course of business," an exception contained in subsection (e) of Tenn. Code Ann. § 63-6-219, and the Hospital should produce it under the Public Records Act. We disagree.

At the hearing, Patricia Eller, Medical Staff Coordinator at the Hospital, testified that she maintains the files concerning peer review proceedings and her office is responsible for credentialing physicians at the Hospital. Ms. Eller's testimony revealed that the pleadings and other documents related to Dr. Bell's lawsuit were provided to her office to become part of Dr. Bell's peer review file. Those materials included Dr. Bell's Amended Complaint, the Temporary Restraining Order ("TRO"), and the Stipulation of Dismissal.

Dr. Shumaker, a pediatrician who served on the MEC and as the Chief of Staff at the Hospital in 2007, also testified at the hearing. One of the main responsibilities of the MEC is peer review activity. Dr. Shumaker testified that she "participated in a mediation process after the TRO [temporary restraining order] was filed" for Dr. Bell's lawsuit. One of the hearing exhibits included the TRO that was granted by the federal court in Dr. Bell's litigation. The TRO enjoined the Hospital from suspending and/or revoking Dr. Bell's hospital privileges. Dr. Shumaker's testimony revealed that the purpose of the mediation was "[t]o resolve the peer review proceedings." At the conclusion of the mediation, Dr. Bell and the Hospital entered into the Settlement Agreement. Dr. Shumaker testified that the terms of the Settlement Agreement were presented to the MEC and the Joint Conference Accreditation Committee ("Joint Conference").

Gautreuax attacks Dr. Shumaker's testimony, claiming that it is self-serving. To undermine the Hospital's claims that the Settlement Agreement was part of Dr. Bell's peer review process, Gautreaux points out that a copy of the Settlement Agreement was never presented to the Hospital's Board of Trustees, the Joint Conference, and the MEC. He cites

*Int'l Yarn Corp. v. Casson*, 541 S.W.2d 150, 152 (Tenn. 1976) as authority that Dr. Shumaker's testimony does not support any of the trial court's factual findings.

Our review of the record indicates otherwise. We find Dr. Shumaker's testimony is credible and supported by the exhibits presented at the hearing. Dr. Bell's lawsuit was related to the suspension and/or revocation of his hospital privileges. In Dr. Bell's Amended Complaint, one of the exhibits, he alleged:

> Defendants' [the Hospital] wrongful and unlawful conduct and imminent actions of *suspending and/or revoking Plaintiff's [Dr. Bell] hospital staff privileges* will cause great, immediate, and irreparable injury, harm, loss and/or damage to Plaintiff. . . .

(emphasis added). Further, the TRO prevented the Hospital from taking any adverse action against Dr. Bell regarding his hospital privileges. All of the relevant documents to Dr. Bell's lawsuit were exhibits at the hearing and those documents reveal Dr. Bell's issues with the Hospital's peer review of his performance. Dr. Shumaker's testimony that she participated in the mediation of Dr. Bell's lawsuit and served on the MEC during that time is unrefuted. Whether a copy of the Settlement Agreement was presented to the Joint Conference or the Board of Trustees does not undercut the fact that Dr. Bell's lawsuit concerned the peer review process. The witness testimony coupled with the hearing exhibits supports the conclusion that Dr. Bell's lawsuit centered on the peer review process.

Therefore, we find that Dr. Bell initiated his lawsuit because of issues with the peer review process at the Hospital. After mediation with the Hospital, Dr. Bell's issues were addressed and the resolution of the peer review process culminated in the Settlement Agreement. Unlike a document prepared in the course of the Hospital's regular business, the Settlement Agreement stemmed from peer review action taken by the MEC. The Peer Review Law protects "[a]ll such information, in any form whatsoever, so furnished to, or generated by, a medical peer review committee. . . ." *See* Tenn. Code Ann. § 63-6-219(e). Gautreaux's argument ignores that Dr. Bell's lawsuit was inextricably linked to the peer review process; the peer review process prompted Dr. Bell to initiate his lawsuit. To accept Gautreaux's argument, we would have to overlook the underlying cause – the peer review of Dr. Bell – that led to the eventual lawsuit and Settlement Agreement. Accordingly, we hold that the trial court correctly determined that the Settlement Agreement is exempt from public disclosure under the privilege created by the Peer Review Law.

## B.

Gautreaux next argues that redacted portions of the Settlement Agreement should have been produced. He claims that the trial court erred by not reviewing the Settlement

Agreement *in camera* and compelling the Hospital to produce a redacted version. Because of the public policy favoring disclosure of public records, he contends that Tennessee courts have consistently ruled that records that are otherwise confidential pursuant to an exception of the Act can be redacted to preserve confidentiality while simultaneously serving the purpose of the Act. In support of this assertion, Gautreaux cites *Schneider v. City of Jackson*, 226 S.W.3d 332 (Tenn. 2007).

In *Schneider*, newspaper reporters sought police officers' field interview cards and the financial records related to a criminal investigation pursuant to the Public Records Act. 226 S.W.3d at 334-35. The city denied repeated requests for the records claiming that they were privileged under the law enforcement privilege. *Id.* at 335. The trial court entered an injunction requiring the city to respond to all public record requests by the reporters. *Id.* at 338. After surveying relevant case law of other jurisdictions, this court adopted the law enforcement privilege and held that it prevented disclosure of the records within that privilege. *Id.* at 339. The Tennessee Supreme Court reversed and held:

> Nonetheless, recognizing that harmful and irreversible consequences could potentially result from disclosing files that are involved in a pending criminal investigation, we conclude that a remand to the trial court is appropriate to allow the City an opportunity to review the field interview cards and to submit to the trial court for *in camera* review those cards or portions of cards which the City maintains are involved in an ongoing criminal investigation and exempt from disclosure.

*Id.* at 345-46. Gautreaux asserts that a remand to the trial court for an *in camera* review is an appropriate remedy in the instant case.

To counter, the Hospital contends that an *in camera* review is not necessary because it is evident from Dr. Bell's Complaint that the action arose out of and related to an ongoing professional review activity. All of Dr. Bell's claims stemmed from the "professional review action" recommended by the MEC. In addition, Dr. Shumaker testified that the purpose of the mediation was to resolve the peer review proceedings and to settle the "professional review action."

We agree with the Hospital. First, the facts of this case are distinguishable from *Schneider*. In *Schneider*, the city refused to promptly respond to the repeated requests for the sought records and "failed to demonstrate which, if any, of the 369 field interview cards are involved in an ongoing criminal investigation and therefore exempt under Tennessee Rule of Criminal Procedure 16(a)(2)." *Id.* at 345. In the case at bar, the Hospital has demonstrated through witness testimony and the pleadings associated with Dr. Bell's lawsuit

-8-

that the Settlement Agreement was a document created as part of the peer review process thereby making it exempt pursuant to state law.

Second, the exemption at issue, the Peer Review Law provides that "all information" given for the purpose of peer review is "confidential" and "shall not be public records." *See* Tenn. Code Ann. § 63-6-219(e). The Peer Review Law does not limit confidentiality only to certain portions of documents; the statute protects all documents.

Third, we find the Tennessee Supreme Court's decision in *Stratienko v. Chattanooga-Hamilton County Hosp. Auth.*, 226 S.W.3d 280 (Tenn. 2007) to be instructive and analogous to this case. The *Stratienko* court specifically addressed disclosure of documents under the Peer Review Law. *Id.* at 283. In that case, a doctor, whose hospital privileges were suspended after an altercation with another doctor, sought the credentials of the other doctor with which whom he had the altercation. *Id.* at 282. The hospital denied the request pursuant to the Peer Review Law. *Id.* The trial court denied the doctor's motion to compel discovery, but it granted permission for an interlocutory appeal. *Id.* This court remanded the case to the trial court to determine if any of the documents were generated in the regular course of the hospital's business and if any of the information sought by the doctor was available from original sources. *Id.* at 282-83. Affirming in part and reversing in part, the Tennessee Supreme Court held that "'information, documents, or records otherwise available from original sources' are subject to discovery pursuant to [Tenn. Code Ann. § 63-6-219(e)], but only to the extent that they are not requested from the peer review committee and are not otherwise privileged." *Id.* at 287. By so holding, the Court recognized the importance of affording confidentiality to documents and information furnished to or generated by a medical peer review committee. The Court further noted the public policy reasons for its holding in *Stratienko* and observed that shielding information related to a peer review action encourages candor in peer review proceedings, which in turn promotes the purpose of the Peer Review Law. *Id.* at 286; *see also Roy v. City of Harriman*, 279 S.W.3d 296, 302 (Tenn. Ct. App. 2008) (perm. to appeal denied) (noting the policy underlying the Peer Review Law encourages confidentiality in the peer review process.).[2]

---

[2]In *Roy*, this court concluded that privileged documents under the Peer Review Law are "both undiscoverable and inadmissible. 279 S.W.3d at 302. This court explained:

If an otherwise privileged document could be used as evidence in any civil action, so long as it was obtained through some means other than the discovery process, the protection afforded by the statute would be severely weakened, and individuals providing information to peer review committees would have far less reason to trust that their statements would remain confidential. This result would be directly at odds with the statutory imperative that "confidentiality is essential both to effective functioning of these peer review committees and to continued improvement in the care and treatment

(continued...)

In light of the critical policy goals of the Peer Review Law, we conclude that the Hospital demonstrated that the Settlement Agreement was created to resolve a peer review action and therefore exempt by the Peer Review Law. Because the Hospital made such a demonstration, it was not necessary for the trial court to conduct an *in camera* review. Our holding recognizes the significance in protecting information related to medical peer review and is consistent with the stated public policy contained within the Peer Review Law. *See* Tenn. Code Ann. § 63-6-219(b)(1).[3]

C.

The Public Records Act provides that if a public entity denies a request for a known public record, then the party seeking access may be awarded all reasonable costs and attorney's fees. *See* Tenn. Code Ann. § 10-7-505(g) (Supp. 2009).[4] Gautreaux claims that he is entitled to the fees and expenses that he incurred as a result of the Hospital's knowing refusal to produce the Settlement Agreement. The statute requires an element of "willfully" when determining whether the recovery of attorney's fees is appropriate. *See id.*; *see also Schneider*, 226 S.W.3d at 346. "Willfully" is a term synonymous to a bad faith requirement. *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999). The Public Records Act does not permit the recovery of attorney's fees when the nondisclosing public entity withheld the records due to a good faith belief that the records were exempt from disclosure. *Id.*

In the instant case, the Hospital denied Gautreaux's request based on a good faith belief that the Peer Review Law exempted the Settlement Agreement from public disclosure.

---

[2](...continued)
of patients."
*Id.*

[3]"In conjunction with the applicable policies of the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101-11152, it is the stated policy of Tennessee to encourage committees made up of Tennessee's licensed physicians to candidly, conscientiously, and objectively evaluate and review their peers' professional conduct, competence, and ability to practice medicine. Tennessee further recognizes that confidentiality is essential both to effective functioning of these peer review committees and to continued improvement in the care and treatment of patients." Tenn. Code Ann. § 63-6-219(b)(1).

[4]"If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity. In determining whether the action was willful, the court may consider any guidance provided to the records custodian by the office of open records counsel as created in title 8, chapter 4." Tenn. Code Ann. § 10-7-505(g).

In fact, we have so concluded that the Settlement Agreement is privileged. Thus, it does not appear that the Hospital acted in bad faith in denying the request. As such, Gautreaux is not entitled to recovery of attorney's fees, and the trial court properly denied Gautreaux's request. We affirm.

Lastly, we address Gautreaux's contention that the trial court improperly shifted the burden of proof at the hearing. Under the Public Records Act, "[t]he burden of proof for justification of nondisclosure of records sought shall be upon the official and/or designee of the official of those records and the justification for the nondisclosure must be shown by a preponderance of the evidence." Tenn. Code Ann. § 10-7-505(c) (Supp. 2009). Tennessee citizens denied access to governmental records may file a petition in court and obtain judicial review of the denial to access. *See* § 10-7-505(a). At the hearing on the petition, the public entity "bears the burden of proof and must justify nondisclosure of the record by a preponderance of the evidence." *Schneider*, 226 S.W.3d at 340 (citing Tenn. Code Ann. § 10-7-505(c)).

The record does indicate that the trial court remarked that "they [the Hospital] filed a written response, so I think the burden shifts back [to Gautreaux]." In so doing, the trial court erred. The Hospital, as the public entity, had the burden of proof to justify nondisclosure at the hearing . Nevertheless, we find that this was harmless error. Our harmless error rule considers whether the error "more probably than not affected the judgment." Tenn. R. App. P. 36(b).[5]

At the hearing, through the introduction of the exhibits and the testimony of Ms. Eller and Dr. Shumaker, the Hospital demonstrated, by a preponderance of the evidence, that the Settlement Agreement was exempt from disclosure by the Peer Review Law. The trial court's Order evaluates the evidence in light of the Hospital's contention that the Peer Review Law exempts the Settlement Agreement. In the Order, the trial court reviewed the witness testimony and outlined the reasons for the exemption under the Peer Review Law. In spite of the trial court's remarks about the burden of proof, he correctly found that the Hospital justified nondisclosure of the Settlement Agreement. *See Sanders v. Anderson*, 746 S.W.2d 185, 189 (Tenn. 1987) (holding that "[a]lthough the reasoning of the Chancellor regarding the allocation of the burden of proof was not correct, any error was harmless....").

---

[5](b) Effect of Error. A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process. When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal. Tenn. R. App. P. 36(b).

We therefore conclude that the trial court's remarks about the burden of proof did not affect the judgment.

## V. CONCLUSION

The judgment of the trial court is affirmed. The case is remanded for collection of costs below. Cost on appeal are taxed to appellant, Thomas M. Gautreaux.

_____
JOHN W. McCLARTY, JUDGE