Alexander A. STRATIENKO, M.D.

v.

## CHATTANOOGA–HAMILTON COUNTY HOSPITAL AUTHORITY et al.

Supreme Court of Tennessee, at Knoxville.

Jan. 3, 2007 Session.

May 14, 2007.

---

Fred H. Moore and Joseph R. White, Chattanooga, Tennessee, for the appellant Chattanooga–Hamilton County Hospital Authority.

Stephen D. Gay, Chattanooga, Tennessee, for the appellant, Mel Twiest, M.D.

John P. Konvalinka, J. Scott McDearman, Mathew D. Brownfield, and Jennifer H. Lawrence, Chattanooga, Tennessee, for the appellee, Alexander A. Stratienko, M.D.

William B. Hubbard and Cynthia H. Wiel, Nashville, Tennessee, for the Amicus Curiae, Tennessee Hospital Association.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and CORNELIA A. CLARK and GARY R. WADE, JJ., joined.

We granted this appeal to determine whether Tennessee Code Annotated section 63–6–219(e) (2004) permits the discovery from a peer review committee of a

physician's medical credentials furnished to that committee. We hold that "information, documents or records otherwise available from original sources" are subject to discovery pursuant to Tennessee Code Annotated section 63–6–219(e), but only to the extent that they are not requested from the peer review committee and are not otherwise privileged. Accordingly, we reverse in part and affirm in part the judgment of the Court of Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 2004, Dr. Alexander Stratienko allegedly became involved in a physical altercation with Dr. Van Stephen Monroe at Erlanger Hospital, which is owned and operated by the Chattanooga–Hamilton County Hospital Authority d/b/a Erlanger Health System ("CCHA"). After being informed by Dr. Mel Twiest, the Chief Medical Officer of CCHA, that his hospital privileges would be suspended as a result of the altercation, Dr. Stratienko obtained a temporary restraining order prohibiting his suspension pending an evidentiary hearing.

On September 22, 2004, the CCHA Credentials Committee recommended Dr. Stratienko's suspension. This recommendation was upheld by the Medical Executive Committee. CCHA sent Dr. Stratienko a letter dated September 27, 2004, stating, in pertinent part:

It was the recommendation of the Credentials Committee that the summary suspension be upheld. They also recommended that you be required to be evaluated by the Tennessee Medical Foundation's Physicians Health Program; that you abide by any recommendations and/or follow-up that they suggest and/or require; and that you be re-

quired to apologize to Dr. Monroe for your actions and to all appropriate Hospital Staff. If these requirements are satisfactorily fulfilled, the summary suspension will be removed.

The Medical Executive Committee voted to uphold both recommendations made by the Credentials Committee.

The letter explained Dr. Stratienko's right to appeal, his right to a hearing, and his right to be represented by counsel. The letter also noted that the suspension would be held in abeyance pending resolution of the restraining order.

CCHA and Dr. Mel Twiest (hereinafter collectively referred to as "CCHA") sought to dissolve the temporary restraining order. As part of the resulting discovery process, Dr. Stratienko sought Dr. Monroe's credentials. His request was denied by CCHA, which cited confidentiality under Tennessee's Peer Review Law of 1967 ("Peer Review Law"), codified at Tennessee Code Annotated section 63–6–219 (2004). Dr. Stratienko filed a motion to compel CCHA to disclose "[a]ny and all records reflecting Dr. Stephen Monroe's peripheral vascular credentials." The trial court denied Dr. Stratienko's motion to compel discovery but granted permission for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

The Court of Appeals reversed and remanded for further proceedings, holding in part that documents and information "otherwise available from original sources" as indicated in Tennessee Code Annotated section 63–6–219(e) (2004) ("subsection (e)") are subject to discovery from a peer review committee as well as directly from the original source.[1] The intermediate appellate court remanded the case to the

---

1. The Court of Appeals also held that the credentialing process is within the scope of

the Peer Review Law, a conclusion that neither party has appealed.

trial court to determine 1) "which, if any, of the documents sought by [Dr. Stratienko] were generated in [CCHA's] 'regular course of business'" and 2) "which part, if any, of Dr. Monroe's credentialing information sought by [Dr. Stratienko] is 'otherwise available from original sources' and order [CCHA] to divulge that information." We granted review.

## II. ANALYSIS

The purpose of the Peer Review Law is "to encourage committees made up of Tennessee's licensed physicians to candidly, conscientiously, and objectively evaluate and review their peers' professional conduct, competence, and ability to practice medicine." Tenn.Code Ann. § 63–6–219(b)(1). The confidentiality of peer review proceedings is essential to this process. *Id.* The Peer Review Law, therefore, creates a privilege that shields certain information furnished to or generated by the peer review process from discovery from a peer review committee during a civil proceeding. Tenn.Code Ann. § 63–6–219(e) (2004). This Court has emphasized that "the broad language of the [Peer Review Law] encompasses any and all matters related to the peer review process." *Eyring v. Fort Sanders Parkwest Med. Ctr., Inc.*, 991 S.W.2d 230, 239 (Tenn.1999). In *Eyring*, we recognized an exception to this privilege that permits limited discovery of documents in the possession of a peer review committee to investigate "committee members' good faith, malice, and reasonable knowledge or belief."[2] *Id.* However, our opinion in *Eyring* did not address the two clarifications pertaining to confidentiality and privilege found in subsec-

tion (e)-"records made in the regular course of business" and "information, documents or records otherwise available from original sources."

 The issues in this case involve the construction of the Peer Review Law. The construction of a statute is a question of law that this Court reviews de novo, according no deference to the conclusions of law made by the lower courts. *Leab v. S & H Mining Co.*, 76 S.W.3d 344, 348 (Tenn.2002); *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn.2000). We presume that every word in a statute has meaning and purpose, and each word should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn.2005). If the statutory language is clear and unambiguous, we apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). If an ambiguity exists, we look to the statutory scheme as a whole to determine the General Assembly's intent and purpose. *Id.*

Subsection (e) provides, in pertinent part, as follows:

*All information, interviews, incident or other reports, statements, memoranda or other data furnished to any committee as defined in this section, and any findings, conclusions or recommendations resulting from the proceedings of such committee are declared to be privileged. All such information, in any form whatsoever, so furnished to, or*

---

**2.** Tennessee Code Annotated section § 63–6–219(d)(1) provides peer review committee members and those participating in or assisting in peer review functions with qualified immunity from liability for damages for ac-

tions relating to the function of such committees "if made or taken in good faith and without malice and on the basis of facts reasonably known or reasonably believed to exist."

*generated by, a medical peer review committee, shall be privileged.* The records and proceedings of any such committees are confidential and shall be used by such committee, and the members thereof only in the exercise of the proper functions of the committee, and shall not be public records nor be available for court subpoena or for discovery proceedings.

Tenn.Code Ann. § 63–6–219(e) (2004) (emphasis added). This portion of subsection (e) broadly protects as privileged any information "furnished to" or "generated by" a medical peer review committee. Information "furnished to" a peer review committee necessarily includes information from an "original source" outside of the committee. Information furnished to a peer review committee from an original source, therefore, is plainly included within the information the statute shields from discovery.

Subsection (e), however, also states:

Nothing contained in this subsection (e) applies to records made in the regular course of business by a hospital or other provider of health care and information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil proceedings merely because they were presented during proceedings of such committee.

It is the last sentence of subsection (e), quoted above, that is the subject of conflicting interpretations. This sentence contains a syntax error. When this part of subsection (e) is examined in isolation, it is arguably ambiguous because there is no punctuation separating the two independent clauses.[3]

Dr. Stratienko reads subsection (e) as stating "[n]othing contained in this subsection(e) applies to ... information, documents or records otherwise available from original sources [which] are not to be construed as immune from discovery or use ...," thereby permitting discovery of original source documents in the possession of the peer review committee. To remedy the error in syntax and interpret this sentence as Dr. Stratienko does, we must add the word "which." In our view, Dr. Stratienko's interpretation is not a reasonable construction of the statute. We reject his construction because it requires the addition of a word not included in the statute and results in an intent not evidenced by the plain language of the statute as a whole. Indeed, Dr. Stratienko's interpretation of subsection (e) would destroy the very protection the General Assembly sought to provide. Such a construction would render meaningless the protection from discovery given in the first part of subsection (e) to information "furnished to" a peer review committee. Moreover, this construction would undermine the legislative intent of encouraging confidentiality in the peer review process, an "essential" element which enables the "effective functioning of these peer review committees and ... continued improvement in the care and treatment of patients." Tenn. Code Ann. § 63–6–219(b)(1).

Some form of punctuation is necessary to join the two independent clauses in the last sentence of subsection (e). To give meaning to each word of this sentence and to avoid any grammatical error, we simply

---

**3.** An "independent clause" is a group of words that contains a subject and verb and expresses a complete thought. An independent clause, therefore, can stand alone as a sentence. *See* Purdue University Online Writing Lab, Independent and Dependent Clauses (Definitions), http://owl.english.purdue.edu/

add a comma after the term "health care." Thus divided, the last sentence of subsection (e) results in a compound sentence[4] composed of two independent clauses that are joined by a coordinating conjunction.[5] The insertion of this comma does the least violence to the statute as written and results in two easily understood independent clauses. This first independent clause is "Nothing contained in this subsection (e) applies to records made in the regular course of business by a hospital or other provider of health care." The second independent clause, which follows "and," is "information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil proceedings merely because they were presented during proceedings of such committee."

It is clear under the first part of subsection (e) that all information "furnished to" a peer review committee from an original source is shielded from discovery. The last sentence of subsection (e) clarifies that such records, information, and documents may be subject to discovery even though they have been presented to a peer review committee. Our construction of the last sentence of subsection (e) results in the following statements: 1) "records made in the regular course of business of a hospital or other health care provider" are not privileged; and 2) "information, documents or records otherwise available from original sources" are not immune from discov-

ery merely because they are in the possession of a peer review committee.

South Carolina has a peer review statute that contains language similar to the language in the last sentence of subsection (e). South Carolina Code Annotated section 40–71–20(A) (2006) provides, in pertinent part:

*Information, documents, or records which are otherwise available from original sources are not immune from discovery or use in a civil action merely because they were presented during the committee proceedings,* nor shall any complainant or witness before the committee be prevented from testifying in a civil action as to matters of which he has knowledge apart from the committee proceedings or revealing such matters to third persons.

(Emphasis added). We agree with the South Carolina Supreme Court's observations in *McGee v. Bruce Hospital System,* 312 S.C. 58, 439 S.E.2d 257, 260 (1993), that

[t]he confidentiality statute provides that documents otherwise available from the original source do not become privileged merely because they are presented to the committee. We interpret the "otherwise available" language to mean that information that is available from a source other than the committee does not become privileged simply by being acquired by the review committee. Accordingly, the statute does not protect information if obtained from alternative

handouts/grammar/g_clause.html (last visited Mar. 9, 2007).

4. When one links two independent clauses, the resulting construction is called a "compound sentence." *See* Purdue University Online Writing Lab, Commas vs. Semicolons in Compound Sentences, http://owl.english.purdue.edu/handouts/grammar/g_commacomp.html (last visited Mar. 9, 2007).

5. There are seven coordinating conjunctions used as connecting words at the beginning of

an independent clause: "and," "but," "for," "or," "nor," "so," and "yet." If the second independent clause in a compound sentence begins with a coordinating conjunction, a comma must precede the coordinating conjunction. *See* Purdue University Online Writing Lab, Independent and Dependent Clauses (Definitions), http://owl.english.purdue.edu/handouts/grammar/g_clause.html (last visited Mar. 9, 2007).

sources. Hence, the plaintiff seeking discovery cannot obtain documents which are available from the original source directly from the hospital committee, but may seek them from alternative sources.

■ We likewise conclude that "information, documents or records otherwise available from original sources" are subject to discovery pursuant to Tennessee Code Annotated section 63–6–219(e), but only to the extent that they are not requested from the peer review committee and are not otherwise privileged. Our holding is consistent with the purpose of the Peer Review Law and the public policy of encouraging peer review by health care providers. If information "otherwise available from original sources" were excluded from the protection of the Peer Review Law, then most documents gathered during the peer review process would be subject to discovery from the peer review committee. Such interpretation could have a chilling effect on the furnishing of information to peer review committees. *See Cruger v. Love,* 599 So.2d 111, 114–15 (Fla.1992) ("The policy of encouraging full candor in peer review proceedings is advanced only if all documents considered by the committee ... during the peer review or credentialing process are protected.").

Our holding is also consistent with decisions in other jurisdictions that have examined this issue. The vast majority of U.S. jurisdictions recognize some form of medical peer review privilege. *See Virmani v. Novant Health, Inc.,* 259 F.3d 284, 290 (4th Cir.2001); *see also* Charles David Creech, *The Medical Review Committee Privilege: A Jurisdictional Survey,* 67 N.C. L.Rev. 179, 179–80 (1988). Several jurisdictions have specifically upheld the confidentiality of documents furnished to a peer review committee from outside sources. *See, e.g., Doe v. UNUM Life Ins.*

*Co. of Am.,* 891 F.Supp. 607, 610 (N.D.Ga. 1995) (construing Georgia's peer review statute and its similar "original source" language and concluding "peer review statutes confer upon peer review organizations the qualities of a black hole; what goes in does not come out, and, unless the information exists in duplicate in the surrounding orbit, nothing that went in is discoverable"); *Ex parte Krothapalli,* 762 So.2d 836, 839 (Ala.2000) (holding that under Alabama's peer review statute "a plaintiff seeking discovery cannot obtain directly from a hospital review committee documents that are available from the original source, but may seek such documents from the original source"); *Humana Hosp. Desert Valley v. Super. Ct. of Ariz.,* 742 P.2d 1382, 1388–89 (Ariz.Ct.App.1987) (noting that evidence possessed by the credentials committee which is not otherwise privileged may still be discovered); *Cruger,* 599 So.2d at 114 ("Virtually all of the information considered during the peer review process originates from outside sources."); *Dye v. St. John Hosp. & Med. Ctr.,* 584 N.W.2d 747, 752 (Mich.Ct.App.1998) (holding that the disclosure of materials in the credentials file of a physician was prohibited under Michigan's Public Health Code and noting that the plaintiff is free to pursue discovery of information in the credentials file if it is available from other sources); *Memorial Hosp.—The Woodlands v. McCown,* 927 S.W.2d 1, 11 (Tex. 1996) (holding in a defamation case brought by a physician against a television network that records of and communication to medical peer review committee were not business records and were protected from disclosure); *but see Pastore v. Samson,* 900 A.2d 1067, 1081 (R.I.2006) (holding that nothing in Rhode Island's statutes or case law requires a plaintiff to obtain access to information considered by the peer review committee from the original source that produces that information

and that "[t]o oblige a plaintiff to track down the original source of unprivileged information that is within the custody of a party to the dispute would be to require burdensome labor for no good reason"). While we recognize that the language of the various statutes differs, the policy reflected in the statutes of other jurisdictions mirrors the policy of Tennessee's Peer Review Law.

Dr. Stratienko further contends that the credentialing information he seeks is comprised of "records made in the regular course of business by a hospital or other provider of health care" and that this information is therefore available for discovery pursuant to the "records made in the regular course of business" language found in subsection (e). His argument is not that CCHA generated these records in the regular course of its business. Instead, he argues that these records were created in the regular course of business of other hospitals or medical schools in which Dr. Monroe received his training and are therefore discoverable from the peer review committee. Such records would be "records otherwise available from original sources" that were "furnished to" the peer review committee. We disagree that such records are discoverable from the peer review committee for the reasons stated above. These records, however, may be obtained from original sources to the extent that these records are not otherwise privileged.

## III. CONCLUSION

We hold that "information, documents or records otherwise available from original sources" are subject to discovery pursuant to subsection (e), but only to the extent that they are not requested from the peer review committee and are not otherwise privileged. Accordingly, we reverse in part and affirm in part the judgment of the Court of Appeals, and we remand this case to the trial court for proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Dr. Alexander A. Stratienko, and his surety, for which execution may issue if necessary.