IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 11, 2008

## FRANCIS ROY, M.D. v. THE CITY OF HARRIMAN, ET AL.

**Appeal from the Circuit Court for Roane County**
**No. 13545     Russell E. Simmons, Jr., Judge**

**No. E2007-00785-COA-R3-CV  - FILED JUNE 30, 2008**

This cause of action arises out of statements made by Dr. William E. Bennett to PHP Companies, Inc. ("PHP"), a health insurance company, regarding Dr. Francis Roy.  Dr. Roy alleges that, in connection with PHP's review of Dr. Roy's application to become an approved PHP provider, Dr. Bennett made written statements that reflected poorly on Dr. Roy's work history and qualifications.  Dr. Roy claims that these statements were false and defamatory.  In response to Dr. Roy's complaint, Dr. Bennett filed a motion for summary judgment, contending, among other things, that the document containing the allegedly defamatory statements is privileged and inadmissible under the Tennessee Peer Review Law, Tenn. Code Ann. § 63-6-219 (2004).  The court granted Dr. Bennett's motion.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded.**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which SHARON G. LEE, J., joined. D. MICHAEL SWINEY, J., filed a separate concurring opinion.

Arthur F. Knight, III, Knoxville, Tennessee, for the appellant, Francis Roy, M.D.

Harold D. Balcom, Jr., Kingston, Tennessee, for the appellee, William E. Bennett, M.D.

### OPINION

Our standard of review on a grant of summary judgment is well-settled.  "Our inquiry involves purely a question of law; therefore, we review the record without a presumption of correctness to determine whether the absence of genuine issues of material facts entitle[s] the defendant to judgment as a matter of law." ***Robinson v. Omer***, 952 S.W.2d 423, 426 (Tenn. 1997). "Tenn. R. Civ. P. 56.03 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts." ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997) (citations omitted).  The moving party,

in this case Dr. Bennett, has the initial burden, and "must either affirmatively negate an essential element of the non-movant's claim or conclusively establish an affirmative defense." ***McCarley v. West Quality Food Serv.***, 960 S.W.2d 585, 588 (Tenn. 1998). Only if Dr. Bennett has succeeded in this task is Dr. Roy required to produce evidence to support his position, whether by rehabilitating his evidence, pointing to new or overlooked evidence, or proving that further discovery is necessary. ***Id***.

As an initial matter, we note that Dr. Roy's complaint asserted causes of action against not just Dr. Bennett, but also the City of Harriman, the Harriman Hospital Association dba Roane Medical Center, hospital administrator Jim Gann, and Dr. Mancel Wakham. Dr. Roy's complaint included claims of libel, procurement or inducement of a breach of contract, invasion of privacy, civil conspiracy, violations of the Tennessee Public Protection Act, and violations of the Tennessee Public Meetings Act. However, the scope of Dr. Roy's appeal is far more limited. As his brief states:

> The only claim Dr. Roy asserts on in [sic] this appeal concerns his action against, Appellee, Dr. Bennett, for falsely filling out and submitting a form regarding Dr. Roy, to PHP Companies, Inc.

Later, Dr. Roy's brief specifies that he "seeks relief from this court with regard to the *use of the form to state a cause of action* against [Dr. Bennett]." (Emphasis added.) Clearly, then, Dr. Roy's claim on appeal is dependent upon the contents of this "form," a copy of which was attached to his complaint.[1]

The record does not make clear exactly how Dr. Roy obtained possession of this document, but oral statements by the parties' attorneys at the summary judgment hearing indicate that it was apparently "leaked" to Dr. Roy by a member of the PHP peer review committee.[2] Dr. Roy's brief states only that "[h]owever it happened, Dr. Roy obtained possession of the form[.]"

Because Dr. Roy's claim against Dr. Bennett explicitly depends upon the contents of the document in question, a threshold issue is whether either the document itself, or testimony about its contents, would be admissible. "[T]he facts on which the nonmovant relies [to avoid summary judgment] must be admissible at the trial," in substance if not in form. ***Byrd v. Hall***, 847 S.W.2d 208, 215-16 (Tenn. 1993). If the subject document is inadmissible, then Dr. Roy has no actionable claim against Dr. Bennett, and the trial court's ruling was correct. Dr. Roy's attorney acknowledged as much at the summary judgment hearing:

---

[1] The same document was subsequently attached to Dr. Roy's affidavit, and its contents are reprinted in Dr. Roy's brief on appeal.

[2] Dr. Bennett's attorney stated that the document "actually was supplied to Dr. Roy, from my understanding of having asked him in deposition, from one of the physicians that was at PHP TennCare's Review Committee." Dr. Roy's attorney subsequently stated that "apparently he got this form from a friendly physician to him in the peer review process."

> If the Court finds that this cannot be brought up and I can't introduce this document that was provided to Dr. Roy and I can't ask Dr. Bennett about it, you know, I might as well not even show up.
>
> * * *
>
> If the Court says it is inadmissible, I can't prove [Dr. Roy's case]. There is no reason to show up and waste the Court's time. There is no reason to empanel a jury and waste their time. . . . If I can't ask any questions [about the document], there is no claim, there is nothing. That is as clear as I can make it.

In essence, if Dr. Bennett demonstrates that Dr. Roy cannot use the document or obtain testimony about its contents, he has negated Dr. Roy's cause of action, because he has affirmatively demonstrated that an essential element of Dr. Roy's complaint, *i.e.*, that the allegedly defamatory information was actually communicated, is totally lacking by virtue of the Tennessee Peer Review Law.

The Peer Review Law is designed to "encourage committees made up of Tennessee's licensed physicians to candidly, conscientiously, and objectively evaluate and review their peers' professional conduct, competence, and ability to practice medicine." Tenn. Code Ann. § 63-6-219(b)(1). In furtherance of this goal, the legislature has declared that "peer review committees must be protected from liability for their good-faith efforts." Tenn. Code Ann. § 63-6-219(b)(2). Dr. Roy does not dispute that PHP's review of Dr. Roy's application qualifies as a "peer review" process under the statute. In fact, he stated at the summary judgment hearing that "I have no reason to doubt" the applicability of the Peer Review Law to this case.

The Peer Review Law protects not only peer review committees, but also individuals who provide information to such committees – such as, in this case, Dr. Bennett. The pertinent portion of the statute reads as follows:

> [A]ny person providing information, whether as a witness or otherwise, to a medical review committee regarding the competence or professional conduct of a physician is immune from liability to any person, unless such information is false and the person providing it had actual knowledge of such falsity.

Tenn. Code Ann. § 63-6-219(d)(2). Again, Dr. Roy acknowledges the statute's applicability, conceding in his brief that "[n]o dispute exists that Appellee, Bennett, is generally immune under the peer review law unless he provides information that is 'false' and he had 'actual knowledge of the falsity.' " That said, knowingly providing false information is precisely what Dr. Roy accuses Dr. Bennett of doing. Specifically, Dr. Roy alleges that Dr. Bennett defamed him as part of an ongoing civil conspiracy related to a long-running dispute between Dr. Roy and the Roane Medical Center, and also in retaliation for Dr. Roy's naming of Dr. Bennett as a defendant in a separate lawsuit, since dismissed, that was pending when Dr. Bennett filled out the PHP form. We express

no opinion regarding these factual matters, because the initial – and ultimately dispositive – issue before us is the admissibility of the very document allegedly containing the false information.

The section of the Peer Review Law governing the admissibility issue reads, in its entirety, as follows:

> *All information, interviews, incident or other reports, statements, memoranda or other data furnished to any committee as defined in this section*, and any findings, conclusions or recommendations resulting from the proceedings of such committee *are declared to be privileged. All such information, in any form whatsoever, so furnished to,* or generated by, *a medical peer review committee, shall be privileged.* The records and proceedings of any such committees are confidential and shall be used by such committee, and the members thereof only in the exercise of the proper functions of the committee, and shall not be public records nor be available for court subpoena or for discovery proceedings. One (1) proper function of such committees shall include advocacy for physicians before other medical peer review committees, peer review organizations, health care entities, private and governmental insurance carriers, national or local accreditation bodies, and the state board of medical examiners of this or any other state. The disclosure of confidential, privileged peer review committee information to such entities during advocacy, or as a report to the board of medical examiners under § 63-6-214(d), or to the affected physician under review, does not constitute either a waiver of confidentiality or privilege. Nothing contained in this subsection (e) applies to records made in the regular course of business by a hospital or other provider of health care[,][3] and information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil proceedings merely because they were presented during proceedings of such committee.

Tenn. Code Ann. § 63-6-219(e) (emphasis and footnote added).

It is clear that the document submitted to PHP by Dr. Bennett constitutes "information, interviews, incident or other reports, statements, memoranda or other data furnished to" a peer review committee, and is thus "declared to be privileged." Any attempt to orally relate the document's contents in testimonial form would also fall into the same privileged category, as the

---

[3] In *Stratienko v. Chattanooga-Hamilton County Hosp. Auth.*, 226 S.W.3d 280, 284 (Tenn. 2007), the Supreme Court noted that Tenn. Code Ann. § 63-6-219(e) "contains a syntax error," in that "[s]ome form of punctuation is necessary to join the two independent clauses in the last sentence of subsection (e)." *Id.* The Court then declared that, "[t]o give meaning to each word of this sentence and to avoid any grammatical error, we simply add a comma after the term 'health care.' " *Id.* at 284-85.

statute's "in any form whatsoever" language makes clear. We reject Dr. Roy's contention that the conditional nature of immunity under § 63-6-219(d)(2) creates an implied exception to the privilege rule of § 63-6-219(e), allowing plaintiffs to support claims of knowing falsity by introducing evidence that would otherwise be privileged. As this court stated in **Logan v. Everett**, No. M2005-00012-COA-R3-CV, 2006 WL 223708, at *5 (Tenn. Ct. App. E.S., filed January 27, 2006), such a construction of the statute "would have the effect of rendering the privilege created by subsection (e) effectively void," since it would mean that "a participant in the peer review process could not assert his immunity without simultaneously losing enjoyment of the privilege from discovery created by the subsection." The Supreme Court has addressed this very issue, and has

> clearly rejected the plaintiff's contention that the statute grants an implicit right to any information furnished to or resulting from the proceedings of the peer review committees, and prohibits any inquiry into the peer review process itself. In the Court's words, "the broad language of the statute encompasses any and all matters related to the peer review process."

*Id.* at *6 (quoting **Eyring v. Fort Sanders Parkwest Med. Ctr.**, 991 S.W.2d 230, 239 (Tenn. 1999)). Thus, "[w]e conclude there is no implied exception to the rights of privilege and confidentiality created by the statute." *Id.* at *7.

That conclusion does not entirely resolve this case, however, because the application of Tenn. Code Ann. § 63-6-219(e) to this record presents a question of statutory interpretation regarding the nature of this statutory "privilege." Specifically, is it a privilege from *discovery* only, or does it also bar the *use* of any privileged information, even if already obtained by a plaintiff? This question is pivotal because, in the instant case, Dr. Roy is not requesting that the document in question be made available to him through the discovery process; he already has it. Thus, whether the document is discoverable is not directly relevant. What matters is whether the document would be *admissible* at trial. Accordingly, we must decide whether the Peer Review Law renders "information . . . furnished to" a peer review committee inadmissible, or merely not subject to discovery.

"This Court's role in statutory interpretation is to ascertain and to effectuate the legislature's intent." **Freeman v. Marco Transp. Co.**, 27 S.W.3d 909, 911 (Tenn. 2000). "We must initially look to the language of the statute itself in determining the intent of the legislature." **Browder v. Morris**, 975 S.W.2d 308, 311 (Tenn. 1998). Here, the statute pronounces that the information in question is "declared to be privileged" and "shall be privileged," without immediately elaborating on what that "privilege" entails. However, later in the same section of the statute, an *exception* to the "privilege" is defined thusly:

> [I]nformation, documents or records otherwise available from original sources are not to be construed as immune from *discovery or use in any civil proceedings* merely because they were presented during proceedings of such committee.

-5-

Tenn. Code Ann. § 63-6-219(e) (emphasis added). Although this "discovery or use" language is found in an exception to the rule, it helps clarify the meaning of the rule itself. It suggests that the statute not only bars the discovery of privileged information, but also makes any such information inadmissible, even if obtained outside the discovery process. This conclusion follows logically from consideration of the alternative theory. If we were to interpret the statute as rendering "privileged" documents undiscoverable *but otherwise admissible*, it would follow that *no* documents would be "immune from . . . use in any civil proceedings" under the Peer Review Law; they would be, at most, merely "immune from discovery." Thus, the statutory phrase "or use in any civil proceedings" would be superfluous. Such a construction runs afoul of the basic rule that courts have "a duty to construe a statute so that no part will be inoperative, superfluous, void or insignificant." ***McGee v. Best***, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). By contrast, an interpretation of the privilege as conferring immunity from *both* "discovery" *and* "use" – that is to say, a holding that privileged documents are both undiscoverable and inadmissable – is internally consistent and "harmonized" with the remainder of the statute, as commanded by ***State v. Odom***, 928 S.W.2d 18, 30 (Tenn. 1996).

This broader understanding of the peer review privilege is also consistent with the policy underlying the Peer Review Law, as stated in the statute itself, which is to encourage confidentiality in the medical peer review process. If an otherwise privileged document could be used as evidence in any civil action, so long as it was obtained through some means other than the discovery process, the protection afforded by the statute would be severely weakened, and individuals providing information to peer review committees would have far less reason to trust that their statements would remain confidential. This result would be directly at odds with the statutory imperative that "confidentiality is essential both to effective functioning of these peer review committees and to continued improvement in the care and treatment of patients." Tenn. Code Ann. § 63-6-219(b)(1).

Further support for this interpretation of the Peer Review Law is provided by ***Logan***. In that case, the plaintiff had attempted to avoid summary judgment in part by supporting his claim with "telephone verification forms" that were, we held, part of the peer-preview process. Our opinion in ***Logan*** does not specify how the plaintiff obtained the forms, but it is clear that, like the plaintiff in the instant case, the plaintiff in ***Logan*** already had the forms in his possession and offered them as evidence before the trial court. ***Logan*** quotes the portion of Tenn. Code Ann. § 63-6-219(e) that declares "information, interviews, incident or other reports, statements, memoranda or other data furnished to any [medical peer review] committee" to be privileged, and then states, "[t]he telephone verification form falls within this category, and *therefore would be inadmissible at trial*." 2006 WL 223708, at *7 (emphasis added). We reiterated this rule twice more in ***Logan***, in reference to two other "telephone verification forms" that the plaintiff sought to rely upon. "Under Tenn.Code Ann. § 63-6-219(e)," we wrote, "this form is privileged and would not be admissible at trial." ***Id.*** And later: "Under Subsection (e) . . . this form is privileged and would be inadmissible at trial." ***Id.*** at *8. As can be seen, ***Logan*** clearly stands for the proposition that the Peer Review Law is a privilege against admissibility, not merely against discoverability.

Additional cases cited by the parties do not alter this conclusion. The earlier quoted Supreme Court case of ***Eyring***, 991 S.W.2d at 239, discussed extensively by both parties, describes the Peer Review Law as creating a "privilege from discovery," but this choice of words bears little weight because, on ***Eyring***'s facts, the distinction between discoverability and admissibility was irrelevant.

-6-

The plaintiff in *Eyring* did not already have possession of information, obtained independent of the discovery process, that he sought to introduce as evidence. Rather, he exclusively sought discovery.[4] Likewise, although *Stratienko v. Chattanooga-Hamilton County Hosp. Auth.*, 226 S.W.3d 280, 283 (Tenn. 2007), states that the Peer Review Law "creates a privilege that shields certain information . . . from discovery," this description must be viewed in the context of the case's facts, which, much like *Eyring*'s, concerned only a request for discovery, not an attempt to rely upon earlier-obtained information. The only Tennessee case we have found that directly addresses the question of whether the peer review privilege bars *admissibility*, rather than merely discoverability, is *Logan*. We concur with *Logan*'s interpretation of the statute, and hold that the Peer Review Law creates a privilege that bars the discovery *or use* of "[a]ll information, interviews, incident or other reports, statements, memoranda or other data furnished to any committee as defined in [the statute], and any findings, conclusions or recommendations resulting from the proceedings of such committee," unless the information in question falls under an exception to the privilege. Tenn. Code Ann. § 63-6-219(e).

There are two exceptions to the privilege that merit brief discussion. Records are not privileged if they are "made in the regular course of business by a hospital or other provider of health care," nor are they privileged if they constitute "information, documents or records otherwise available from original sources." Tenn. Code Ann. § 63-6-219(e). *Stratienko* clarifies the scope of the latter exception, rejecting the argument that it is a sort of inevitable discovery rule, whereby anything that could theoretically be obtained from an original source is therefore discoverable from *anyone*, including the peer review committee. Such an interpretation would, according to *Stratienko*, eviscerate the purpose of the statute and "could have a chilling effect on the furnishing of information to peer review committees." *Id.*, 226 S.W.3d at 286. Instead, *Stratienko* declares that documents available from the original source "may be obtained from original sources," but "only to the extent that they are not requested from the peer review committee and are not otherwise privileged." *Id.* at 287.[5]

---

[4] The Supreme Court *granted* the plaintiff in *Eyring* the right to conduct discovery "for the limited purpose of investigating the committee members' good faith, malice, and reasonable knowledge or belief." 991 S.W.2d at 239. However, the Court agreed with the trial court that the plaintiff "was not entitled to inquire about the deliberative process of the peer review committee, its conclusions, or about the basis or reasons for its conclusions," and thus the Court "prohibit[ed] any inquiry into the peer review process itself." *Id.* Since the document relied upon by Dr. Roy in the instant case is part and parcel of "the peer review process itself," and any testimony about its contents would be an inquiry into that process, *Eyring*'s holding does not militate in Dr. Roy's favor on these facts.

[5] It is not entirely clear from *Stratienko* whether the original sources themselves are the only permissible targets of discovery requests for documents "available from original sources," or whether, alternatively, discovery may be sought from *any source other than the peer review committee*, such as third parties who incidentally obtained the documents, so long as the document is also *available* from the original source. Nor is it immediately apparent how the rules laid down by *Stratienko* would apply to close questions involving issues of *admissibility* as opposed to mere discoverability. We need not resolve these questions here, however, because, as will be seen, it is clear that no evidence exists in this record that would bring the document offered by Dr. Roy under any interpretation of the "original source" exception.

With regard to the "regular course of business" exception, the parties agree, and it is clear from the record, that the subject document – the completed form sent by Dr. Bennett to PHP – was part of a peer review process undertaken by the insurer. Surely the legislature, in creating this exception to the peer review privilege, cannot have meant to exempt all documents prepared in the "regular course of *peer review* business," since such a broad exception would completely swallow the rule. Instead, we interpret this provision as referring to documents prepared in the "regular course of business" *independent of* peer review processes. Thus, that exception has no applicability to this case. Dr. Roy does not argue otherwise.

That leaves the "original source" exception.[6] Having reviewed the record, we find nothing to suggest that the document in question is, or was, "available from" Dr. Bennett.[7] On the contrary, Dr. Bennett testified during his deposition that he does not keep copies of forms such as the one he filled out regarding Dr. Roy. Dr. Roy does not claim otherwise, and does not discuss either the document's "availability" or its actual origin in any detail. Dr. Roy's treatment of this issue on appeal is limited to a statement in his brief that "[h]owever it happened, [Dr. Roy] obtained possession of the form[.]" Application of the "original source" exception to these facts would therefore be an exercise in unbridled speculation. There is no evidence that the document was, or could have been, obtained directly from Dr. Bennett, nor from any other arguable "original source" aside from the PHP peer review committee itself.[8] The record does not create a disputed issue of material fact regarding these questions.

For all of the reasons stated above, we conclude that Dr. Bennett has affirmatively negated Dr. Roy's cause of action by demonstrating the inadmissibility of a critical piece of evidence, without which Dr. Roy's counsel correctly concedes that he cannot hope to prove his case. Dr. Roy has failed to rehabilitate his evidence or otherwise save his case. Summary judgment was therefore appropriate.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Francis Roy, M.D. This case is remanded to the trial court for collection of costs assessed below, pursuant to applicable law.

---

[6] We assume *arguendo* that Dr. Bennett, rather than PHP, is the "original source" of the document in question. Dr. Bennett disputes this; he argues that PHP, having "generated" the blank form that Dr. Bennett filled out and sent back to PHP, is the "source" of the document. If that were so, then the "original source" exception certainly could not apply, since the "source" would be the peer review committee itself. However, it is at least arguable that Dr. Bennett himself is the "original source" of the *completed* form, as opposed to the *blank* form. We do not so hold, but we proceed on that assumption for present purposes.

[7] We recognize that Dr. Bennett attached the document as an exhibit to his motion for summary judgment, and thus it was obviously "available from" him at that point – but that was *after* Dr. Roy attached it to his complaint. The pertinent question for this purpose would be the document's availability at the time Dr. Roy originally obtained it.

[8] As noted earlier, statements by both attorneys during the summary judgment hearing suggest that a member of the PHP peer review committee may have "leaked" Dr. Roy the document. If that is true, and if the PHP committee is the only "source" from which the document was available, this exception obviously would not apply.

_____
CHARLES D. SUSANO, JR., JUDGE