IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 17, 2008 Session

# KIMBERLY POWELL v. COMMUNITY HEALTH SYSTEMS, INC., NATIONAL HEALTH CARE OF CLEVELAND, INC., d/b/a CLEVELAND COMMUNITY HOSPITAL

**Direct Appeal from the Chancery Court for Bradley County**
**No.  05285      Hon. Jerri S. Bryant, Chancellor**

---

**No. E2008-00535-COA-R9-CV - Filed January 2, 2009**

---

We granted an appeal pursuant to Rule 9, Tenn. R. App. P., to determine the extent of discovery that would be allowed of an infection control nurse who had investigated the infectious rates at the hospital, because the investigation was prompted by the hospital's Quality Control Committee. Defendants argued that the investigation was confidential and privileged, pursuant to Tenn. Code Ann. 63-6-219.  The Trial Court allowed discovery and we affirm, setting forth parameters of the discovery.

**Tenn. R. App. P.9 Appeal Granted; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which SHARON G. LEE, SP.J., joined, and CHARLES D. SUSANO, JR., J., dissented and filed a separate opinion.

Cynthia D. Hall, Chattanooga, Tennessee, for appellant, National Health Care of Cleveland, Inc.

Timothy L. Warnock and John R. Jacobson, Nashville, Tennessee, for appellant, Community Health Systems, Inc.

Grace E. Daniell, P.C., Chattanooga, Tennessee, for appellee, Kimberly Powell.

## OPINION

Plaintiff filed a Complaint against Community Health Systems, Inc., National Healthcare of Cleveland, Inc., d/b/a Cleveland Community Hospital, Tristate Orthopedics, Rehabilitation and Pain Management Center, P.C., and Rickey L. Hutcheson, D.O.  Plaintiff alleged that she was harassed and discriminated against in her employment, and that she had been a victim

of assault and battery, constructive discharge, outrageous conduct, intentional/negligent infliction of emotional distress. She alleged she was repeatedly subjected to unwanted sexual advances, touching, and sexually offensive comments by Dr. Hutcheson, and on one occasion he touched her breasts, exposed himself, and masturbated on her.

Defendants answered, denying liability and National Healthcare of Cleveland, Inc., d/b/a Cleveland Community Hospital then filed a Motion for Protective Order, asserting that plaintiff should not be allowed to depose Sherri Sexton, a former infection control nurse, regarding her investigation of infection rates at the hospital, because when she had made an investigation in 2005 regarding increased infection rates, she was doing so as part of a quality control committee and was working under the direction of the Chief Quality Officer at the hospital. They asserted that the investigation was confidential and privileged, not subject to discovery pursuant to Tenn. Code Ann. §63-6-219.

Defendants attached an Affidavit from their attorney who stated that plaintiff testified in her deposition that she had heard rumors that Hutcheson had some type of infection and was "in hysterics" after the masturbation incident. The attorney stated that plaintiff's attorney questioned many hospital employees about an increased infection rate at the hospital, and that Sexton was identified as the infection control nurse who would have investigated the infection rate. They also attached the Affidavit of Robin Byler, who stated that she served as Chief Quality Officer at the hospital from February 2004 until May 2006, and was responsible for maintaining quality at the hospital, including review of peer records. She stated she was also over the infection control nurse, who at that time was Sherri Sexton. Byler stated that there was a time period when they noted increased infection rates in the post-op area of the hospital, and so Sexton investigated as part of a medical quality review committee. She further stated that the function and purpose of the investigation was to evaluate and improve the quality of healthcare rendered by providers at the hospital, and that all investigative work done by Sexton was as part of a quality review committee, and that this was something the hospital treated as privileged and confidential under Tenn. Code Ann. §63-6-219.

Plaintiff filed a Response, stating that she was informed that there was an increased infection rate in post-op patients who were being treated primarily by Dr. Hutcheson, and that as a result of the increased infection rate, meetings were held at the hospital that plaintiff and others were required to attend. Plaintiff stated the employees and doctors were tested in an attempt to determine the source of the infection, and that plaintiff was told by another employee that Hutcheson had Hepatitis C. Plaintiff stated that she was pregnant at the time, and became fearful that she and her child might have been exposed because Hutcheson had ejaculated on her arm during the masturbation incident.

Plaintiff argued that the peer review statute expressly stated that it did not prohibit records available from an "original source" that were made in the regular course of business from being discovered in a civil proceeding just because they were used/presented during proceedings of a peer review committee. She further argued that since Sexton performed the investigation, she was

the "original source", and that her findings should not be immune from discovery simply because they might have been reported to a medical quality review committee, as they were made in the regular course of her job duties.

Plaintiff attached excerpts from the deposition of Robin Byler, who testified that in early 2005, they noticed an increased rate of post-op infections at the hospital, and wanted to find out what the source might be. She testified the patients who saw increased post-op infection were primarily orthopedic patients, and she was not aware of Hutcheson having any type of infection, and that no allegations regarding that were ever made in any of the staff meetings. She testified the hospital did not test physicians for hepatitis C, but physicians did have to submit a statement from a doctor that they were without such types of diseases.

Plaintiff also attached excerpts from Hutcheson's deposition, wherein he testified that he did not have hepatitis C to his knowledge. She then filed a Motion to Take Second Deposition of Sherri Sexton and Motion to Compel. The Trial Court entered an Order, stating that the information sought by plaintiff was not documentation generated during a peer review process, but was part of the hospital's regular course of business, and was also otherwise available from original sources. The Court concluded that the plaintiff would be allowed to take a further deposition of Sexton.

Defendants filed a Motion for Interlocutory Appeal, which the Trial Court granted, and this Court granted a Tenn. R. App. P. 9, appeal.

The record contains the deposition of Robin Byler, who testified that she worked at Cleveland Community Hospital from 2003 to 2006, and was employed as assistant chief nursing officer and chief quality officer. She testified that she supervised the infection control nurse, and that the records of infections were kept as "surveillance records" by the infection control office. She said that Ms. Sexton was responsible for monitoring the infection rate.

In Sexton's deposition, which was also part of the record, she testified that she was a nurse practitioner and an RN, and that she went to work for the hospital in 2000 in Infection Control and Education. She testified that in 2004, they changed her position to Infection Control Director and Education Coordinator. She described her job as surveillance for infections. She related that she would receive patient census reports on a daily basis, as well as surgery lists, and would check to make sure that appropriate precautions were taken for patients with infections. She testified that it was part of her job to investigate any outbreaks and try to determine the cause, and all this was done in the regular course of business of the hospital.

Sexton testified that sometimes the quality review committee would indicate that a study needed to be done because there was an outbreak, and she would do an in-depth study. She stated that she had performed 5 or 6 such studies at the direction of the quality review committee, and the quality review committee was designed to identify areas of potential problems and to allow internal review and peer evaluation to correct the same. She testified that the surveillance

undertaken for the quality review committee was more specific and tailored, and not part of her routine duties. She explained that known infections would be addressed as part of her normal job, but that targeting an area that needed improvement would come under quality review. She testified that she worked in a dual role, as infections were part of her normal job and could be addressed by quality review.

Sexton testified that there was a period of time during plaintiff's employment when there were more post op infections than normal, and that the normal response which she would take in that instance would be to review the charts, culture equipment, do interviews, and do culture sampling/testing of staff. She testified that if it was identified that a specific doctor had a higher infection rate, a request would be submitted to the quality review committee for approval of an in-depth evaluation. She said she could not just target a specific individual without committee approval. She admitted that it was part of her normal job duties to track all post op infections and send a report to the quality review committee. She explained that she looked at all infections as part of her normal job, and that if she saw a large number of them she would then go to peer review for permission to do an in-depth evaluation.

Sexton testified she was not aware of Dr. Hutcheson having Hepatitis C, and stated that he was required to disclose such information and he had not, so she had no reason to think that he had it. She testified that she reported her findings to the review committee, and developed written reports that she transmitted to the committee. She testified that she did daily worksheets as part of her normal job duties but those were shredded when she made the larger reports to the review committee.

The sole issue on appeal is whether the Trial Court erred in allowing plaintiff to depose Sexton related to the hospital's investigation of an increased infection rate in the post op area, because such information is protected by the Tennessee Peer Review Law?

Tennessee's Peer Review Statute, Tenn. Code Ann. §63-6-219, states in pertinent part as follows:

> (c) As used in this section, "medical review committee" or "peer review committee" means any committee of a state or local professional association or society, including impaired physician peer review committees, programs, malpractice support groups and their staff personnel, or a committee of any licensed health care institution, or the medical staff thereof, or any committee of a medical care foundation or health maintenance organization, preferred provider organization, individual practice association or similar entity, the function of which, or one (1) of the functions of which, is to evaluate and improve the quality of health care rendered by providers of health care service to provide intervention, support, or rehabilitative referrals or services, or to determine that health care services rendered were professionally indicated, or were performed in compliance with the applicable standard of care, or that the cost of health care rendered was considered reasonable by the providers of

-4-

professional health care services in the area and includes a committee functioning as a utilization review committee under the provisions of Public Law 89-97 (42 U.S.C. §§ 1395-1395pp) (Medicare Law), or as a utilization and quality control peer review organization under the provisions of the Peer Review Improvement Act of 1982, Public Law 97-248, §§ 141-150, or a similar committee or a committee of similar purpose, to evaluate or review the diagnosis or treatment or the performance or rendition of medical or hospital services that are performed under public medical programs of either state or federal design.

* * *

(e) All information, interviews, incident or other reports, statements, memoranda or other data furnished to any committee as defined in this section, and any findings, conclusions or recommendations resulting from the proceedings of such committee are declared to be privileged. All such information, in any form whatsoever, so furnished to, or generated by, a medical peer review committee, shall be privileged. The records and proceedings of any such committees are confidential and shall be used by such committee, and the members thereof only in the exercise of the proper functions of the committee, and shall not be public records nor be available for court subpoena or for discovery proceedings. One (1) proper function of such committees shall include advocacy for physicians before other medical peer review committees, peer review organizations, health care entities, private and governmental insurance carriers, national or local accreditation bodies, and the state board of medical examiners of this or any other state. The disclosure of confidential, privileged peer review committee information to such entities during advocacy, or as a report to the board of medical examiners under § 63-6-214(d), or to the affected physician under review, does not constitute either a waiver of confidentiality or privilege. **Nothing contained in this subsection (e) applies to records made in the regular course of business by a hospital or other provider of health care and information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil proceedings merely because they were presented during proceedings of such committee.**

(Emphasis added).

Both parties rely on the case of *Stratienko v. Chattanooga-Hamilton County Hospital Auth.*, 226 S.W.3d 280 (Tenn. 2007). In that case, Dr. Stratienko sought to discover records relating to another doctor's credentials from the defendant, and the defendant refused, relying on the above statute. The Supreme Court held that "information, documents or records otherwise available from original sources" were subject to discovery, but only to the extent they were not requested from the peer review committee and were not otherwise privileged. *Id.* The Court specifically held that these records could be obtained from the original sources. *Id.*

The Court quoted with approval from a South Carolina Supreme Court opinion

construing a similar South Carolina peer review statute, as follows:

[t]he confidentiality statute provides that documents otherwise available from the original source do not become privileged merely because they are presented to the committee. We interpret the "otherwise available" language to mean that information that is available from a source other than the committee does not become privileged simply by being acquired by the review committee. Accordingly, the statute does not protect information if obtained from alternative sources. Hence, the plaintiff seeking discovery cannot obtain documents which are available from the original source directly from the hospital committee, but may seek them from alternative sources.

*Id*. at 285-286, *quoting McGee v. Bruce Hospital System*, 312 S.C. 58, 439 S.E.2d 257, 260 (1993).

The statute has been construed by the Eastern Division of the Federal District Court.[1] In that case the defendant claimed privilege under the TPRL and the court said "reports prepared in the normal course of business by Defendants relating to the care of Mr. Brown are not protected merely because they have been provided to a peer review committee. Rather, the copies of the documents in the possession of a peer review committee are protected, but the documents may still be obtained from the original source, the Defendants."

Plaintiff was seeking to depose Sexton regarding information that she gathered during an investigation she undertook, apparently at the direction of the review committee, regarding an increased rate of post op infections. Sexton admitted, however, that such investigations were also part of her normal job duties, although she had to have direction from the committee to perform an "in-depth" study. Applying the above statutory interpretation to the facts of this case, it is clear that any documents in the possession of the committee would not be discoverable, but that any documents or information retained by Ms. Sexton would be discoverable, as these would be records she made in conjunction with the regular course of business of the hospital. Likewise, any records that are available from an "original source" (such as Ms. Sexton, if the record was made by her) are likewise discoverable. The fact that such records or the information was provided to the peer review committee would not prevent its discovery. The statute expressly provides that records regularly made by the hospital and available from alternative sources are discoverable.

Accordingly, we affirm the Judgment of the Trial Court and remand with the cost of the appeal assessed to the appellants.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[1]This case is reported by Westlaw as WL1751675 (2008).